# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DONALD A. FINNEY,                )
                                 )
               Plaintiff,     )
                                 )
       v.                    )
                                 )  Civ. No. 22-1059 SRF
DELAWARE DEPARTMENT OF    )
TRANSPORTATION,           )
                                 )
               Defendant.   )

## OPENING BRIEF IN SUPPORT OF DEFENDANT'S
## <u>MOTION FOR SUMMARY JUDGMENT</u>

**STATE OF DELAWARE
DEPARTMENT OF JUSTICE**

Victoria R. Sweeney (#6072)
Deputy Attorney General
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400
Victoria.Sweeney@delaware.gov
*Attorney for Defendant*

Date: April 12, 2024

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................. ii

NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 1

SUMMARY OF ARGUMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 1

ARGUMENT ................................................................................................................. 7

I.       LEGAL STANDARDS ....................................................................................... 7

         A.       Summary Judgment Standard .................................................................. 7

         B.       The *McDonnell Douglas* Burden Shifting Framework ........................... 8

II.      STATUTORY BARS TO PLAINTIFF'S TITLE VII CLAIMS ......................... 8

III.     PLAINTIFF CANNOT ESTABLISH DELDOT VIOLATED TITLE VII
         (COUNTS I, III, V) ........................................................................................... 10

         A.       Failure to Promote ................................................................................. 10

         B.       Retaliation ............................................................................................. 14

         C.       Disparate Impact ................................................................................... 16

IV.      THE STATE LAW CLAIMS FAIL (COUNTS II, IV, V) ................................ 19

CONCLUSION ............................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Alcantara v. Aerotek, Inc.*, 765 F. App'x 692 (3d Cir. 2019) ........................................................12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................................7

*Carter v. Wesley*, 2020 WL 838310 (D. Del. Feb. 20, 2020) ........................................................7

*Conklin v. Warrington Twp.*, 2009 WL 1227950 (M.D. Pa. Apr. 30, 2009) ................................15

*Davis v. City of Newark*, 2008 WL 2973912 (3d Cir. 2008) ........................................................15

*Esaka v. Nanticoke Health Servs., Inc.*, 752 F. Supp. 2d 476 (D. Del. 2010) .............................19

*Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509 (3d Cir. 1992)..............................13

*Flores v. Danberg*, 84 F. Supp. 3d 340 (D. Del. 2015) .........................................................14, 15

*Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994) ..............................................................10, 11, 12

*Geltzer v. Virtua West Jersey Health Systems*, 804 F.Supp.2d 241 (D.N.J. 2011).......................11

*Hamilton v. Albert Einstein Healthcare Network*, 2022 WL 407638 (E.D. Pa. Feb. 10, 2022)......9

*Healy v. New York Life Ins. Co.*, 860 F.2d 1209 (3d Cir. 1988)...................................................18

*Hicks v. ABT Assocs., Inc.*, 572 F.2d 960 (3d Cir. 1978).............................................................8

*Hyland v. Smyrna Sch. Dist.*, 608 F. App'x 79 (3d Cir. 2015) ....................................................19

*Lanning v. Southeastern Pa. Transp. Auth.*, 181 F.3d 478 (3d Cir. 1999) ..............................16, 17

*Lorah v. Tetra Tech, Inc.*, 541 F. Supp. 2d 629 (D. Del. 2008)....................................................15

*Luta v. Delaware*, 847 F. Supp. 2d 683 (D. Del. 2012)................................................................12

*Lewis v. State of Del. Dep't of Pub. Instruction*,
      948 F. Supp. 352 (D. Del. 1996)........................................................................................10

*Martinez v. Dep't of Homeland Sec./Div. of the State Police*,
      2019 WL 1220305 (D. Del. Mar. 15, 2019) ......................................................................19

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .............................7

*McCann v. Astrue*, 293 Fed. Appx. 848 (3d Cir. 2008) ..................................................................10

*McFadden v. Whole Foods Market Group, Inc.*,
    2021 WL 736899 (E.D. Pa. Feb. 25, 2021) ...........................................................................17

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .......................................................8, 10

*Moore v. City of Phila.*, 461 F.3d 331 (3d Cir. 2006) ..................................................................14

*N.A.A.C.P. v. N. Hudson Regional Fire & Rescue*, 665 F.3d 464 (3d Cir. 2011) .........................17

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ....................................................8, 9

*Nelson v. Upsala Coll.*, 51 F.3d 383 (3d Cir. 1995) ....................................................................14

*Newark Branch, N.A.A.C.P. v. City of Bayonne*, 134 F.3d 113 (3d Cir. 1998) ...........................17

*Noel v. The Boeing Co.*,  622 F.3d 266 (3d Cir. 2010) ..................................................................9

*Scott v. Parkview Memorial Hosp.*, 175 F.3d 523 (7th Cir. 1999) ...............................................18

*Simko v. United States Steel Corp*, 992 F.3d 198 (3d Cir. 2021)...................................................8

*Steward v. Sears Roebuck & Co.*, 231 F. App'x 201 (3d Cir. 2007) .......................................11, 12

*Subh v. Wal-Mart Stores East, LP*, 2009 WL 866798 (D. Del. Mar. 31, 2009) .............................8

**Statutes and Rules**

Fed. R. Civ. P. 56(a) ....................................................................................................................7

19 *Del. C.* § 714 .....................................................................................................................1, 19

28 U.S.C. § 1367(c) .....................................................................................................................19

42 U.S.C. § 2000e *et seq.*.................................................................................................. *passim*

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Donald Finney ("Plaintiff" or "Finney"), a former employee of the Delaware Department of Transportation ("Defendant" or "DelDOT"), initiated this action on August 11, 2022, and filed an Amended Complaint (the "Complaint") on January 25, 2023.  D.I. 1, 23. Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII")[1] and the Delaware Discrimination in Employment Act (the "DDEA").[2]  Defendant filed an answer to the Complaint on February 8, 2023.  D.I. 24.  The parties completed discovery on February 29, 2024.

## SUMMARY OF ARGUMENT

1.      Plaintiff failed to exhaust his administrative remedies under Title VII, untimely filed his 2019 failure to promote claim, and failed to timely and properly allege retaliation and disparate impact on his 2018 failure to promote claim.

2.      Plaintiff's Title VII claims fail as a matter of law because Plaintiff cannot meet his burden in proving intentional racial discrimination, retaliation based on race, or disparate impact.

3.      Plaintiff's state law claims for violations of the DDEA are barred because Plaintiff sought relief in federal court under Title VII and fails for the same reasons as under Title VII.

## STATEMENT OF FACTS

### I.   DelDOT Maintenance and Operations

DelDOT's Division of Maintenance and Operations is responsible for keeping the State of Delaware's road transportation network in a state of good repair, including emergency responses to weather events, snow removal, and maintenance of equipment fleets.  A0541 (Brown Decl. ¶ 2).  The Division of Maintenance and Operations is organized into four geographic maintenance

---

[1] 42 U.S.C. §§ 2000e *et seq.*
[2] 19 *Del. C.* §§ 710 *et seq.*

districts: North District, Canal District, Central District, and South District.  Each maintenance district is led by a District Engineer. A0542 (Brown Decl. ¶ 4).  The Maintenance Engineer and the Public Works Engineer report directly to the District Engineer.  Both positions are Merit Classified positions subject to the State of Delaware Merit Rules promulgated by the Merit Employee Relations Board ("MERB") and are classified as Engineer Program Manager II. A0542 (Brown Decl. ¶ 5).

In the Canal District, an Assistant Maintenance Engineer and a Contracts Engineer report to the Maintenance Engineer.  Both Assistant Maintenance Engineer and Contracts Engineer are merit positions, classified as Engineer Program Manager I.  A0542 (Brown Decl. ¶ 7).  Kevin Canning ("Canning") was the District Engineer for the Canal District from August 2014 through July 2021. A0436 (Canning Dep. 12:2–9). Richard Fain was the Maintenance Engineer for the Canal District from 2006 to February 2018. A0436 (Canning Dep. 12:22–23).

The Maintenance Engineer position within each district has not become vacant often, and the applicant pool for the position has been predominately white.  A0538 – 39 (Winkler Decl. ¶¶ 14–18).

## II.   **Plaintiff's Employment with DelDOT**

Plaintiff identifies as an Asian American male. D.I. 23 ¶ 27. DelDOT employed Plaintiff starting in 1999.  D.I. 24 ¶ 28.  Plaintiff held the position of Assistant Maintenance Engineer for the Canal District from 2014 through December 2023.   D.I. 24 ¶ 29; A0466–67 (Pltf. Dep. 9:19–10:1).  Plaintiff's performance was reviewed annually, and each year, he received "Meets Expectations" or "Exceeds Expectations." A0074–75; A0077–92.

In 2014, Plaintiff applied for the position of Maintenance Engineer for the North District and was denied.  A0263. He grieved his denial under the Merit Rules, claiming the selection of the

successful candidate constituted racial discrimination and an abuse of discretion. *Id.* At the grievance hearing, Plaintiff admitted there was no evidence of racial discrimination but claimed that his sixteen years of experience "should outweigh any other candidate." A0263–64. The grievance was denied, as there was no evidence that DelDOT abused its discretion. A0264.

### III.   DelDOT's Hiring Process Generally

DelDOT follows the State of Delaware, Department of Human Resources ("DHR") User's Guide to Merit System Hiring (A0016–64) in its recruiting and hiring efforts. The goal is to manage recruitment so that the position can be filled as quickly as possible with a highly qualified candidate while meeting the requirements of the Delaware State Employee Merit Rules. A0536 (Winkler Decl. ¶ 5). DelDOT utilizes a structured interview format when interviewing employees to increase the validity, reliability, and perceptions of fairness. A0536–37 (Winkler Decl. ¶ 8).

DelDOT's interview panels are diverse (race and gender) and consist of at least three members. A0024; A0537 (Winkler Decl. ¶ 8). No panel member can be a friend or relative of any candidates being interviewed. A0001–03; A0537 (Winkler Decl. ¶ 8). All interviewees are asked the same set of questions, which are designed to assess the candidate's qualifications in relation to the position's essential job duties. A0024; A0025; A0537 (Winkler Decl. ¶ 8).

For all times relevant to this litigation, DelDOT's Equal Employment Opportunity/Affirmative Action Officer ("EEO Officer") must approve interview panel and questions prior to conducting the interview. The EEO/AA Officer ensures the panel complies with equal opportunity laws, guidelines, and policies so that minoritized and racialized applicants, women, and individuals with disabilities are given an equal opportunity during the interview process. The EEO/AA Officer reviews the interview questions to ensure they questions related to the job specifications. A0537 (Winkler Decl. ¶ 9).

The decision on which candidate to hire typically is based on a number of criteria, including (1) the applications; (2) the interview; (3) the compatibility between the candidate and DelDOT, and; (4) results of reference checks. DHR's Merit System Hiring User's Guide provides that "[b]y submitting the application, candidates agree to the release of information from previous employers" and authorizes the interview panel to contact the employer and perform reference checks "as part of the decision-making process" A0036; A0537 (Winkler Decl. ¶ 9).

The hiring panel makes a unanimous decision when selecting the successful applicant and provides a written justification for each candidate being considered. A0537 (Winkler Decl. ¶ 9). Then, relevant documentation is provided to DelDOT human resources for processing and the hiring manager submits a hiring request to the EEO/AA Officer for review and approval.  Upon the EEO/AA Officer's approval, DelDOT human resources then makes a job offer. *Id.*

## IV.     THE 2018, 2019, AND 2021 PROMOTIONAL PROCESSES

In January 2018, Plaintiff applied for a vacant Maintenance Engineer position in the Canal District. A0093–96; A0109–A0119. The hiring manager for the position was Canning (white male). A0127. He and he, along with LaTonya Gilliam (black female), and Brian Urbanek (white male) served on the hiring panel.  *Id.* At the time, Gilliam was a Civil Engineer Program Manager II, and Urbanek was Assistant Director for DelDOT's Statewide Support Services. *Id.*

The hiring panel interviewed eight candidates, including Finney.  A0127–28.  The panel's top three choices for the position were (1) Brian Schilling (white male); (2) Mark Buckalew (white male); and (3) John Garcia (Hispanic male).  *Id.*  Plaintiff was not selected because he interviewed poorly in comparison to the top three candidates.  *Id.*; *see e.g.* A0120–25.  The panel selected Brian Schilling ("Schilling") as the successful applicant. A0127.  The EEO/AA Officer approved Schilling, after human resources determined that no nepotism conflict existed. A0126, A0540

(Winkler Decl. ¶ 21). Schilling was the Maintenance Engineer for the Canal District from February 2018 through June 2021. A0382 (Schilling Dep. 16:21–23).

Plaintiff grieved his 2018 failure to promote claim under the Merit Rules, alleging the selection process constituted gross abuse of discretion. A0266–68.  His complaint proceeded through the merit grievance procedure, and ultimately, his grievance was denied. A0277-81.

In January 2019, Plaintiff applied for a vacant Maintenance Engineer position in the North District. A0129–132; A0133-44. The hiring manager was Gilliam, who at the time was the District Engineer for the North District.  The hiring panel consisted of Gilliam, Urbanek, and Alastair Probert (white male), who was the District Engineer for the South District.  A0203-06. The hiring panel interviewed seven candidates, including Plaintiff. *Id*.

Following the interviews, the hiring panel was split in its decision between Plaintiff and John Garcia ("Garcia").  *Id*.; A0200-02. At the time, Garcia was the Contracts Engineer for the Canal District.  A0137. Schilling was the direct supervisor for both Garcia and Plaintiff. A0203-06. Gilliam contacted Schilling and Canning, who was also in Plaintiff and Garcia's chain of command, for more information regarding Plaintiff and Garcia. Based on feedback from Schilling and Canning, the hiring panel selected Garcia as the successful applicant. *Id*. Plaintiff was not selected because Garcia had been outperforming Plaintiff in areas in which Plaintiff was struggling. A0203–04.

Plaintiff grieved his failure to promote under the Merit Rules, alleging the selection process constituted gross abuse of discretion. A0282-85.  His complaint proceeded through the merit grievance procedure, and ultimately, the MERB denied Plaintiff's grievance. A0290-305.

In July 2021, Plaintiff applied for a vacant Maintenance Engineer position for the Canal District. A0207-09; A0210-19. The hiring manager was Anne Brown ("Brown") (white female),

the Director of Maintenance and Operations. A0542 (Brown Decl. ¶ 8). The hiring panel consisted of Canning, Brown, and Shanté Hastings (black female), the DelDOT Deputy Secretary and Chief Engineer of the Division of Transportation Solutions. *Id.*; A0260–62.

The hiring panel interviewed five candidates, including Plaintiff.  The hiring panel's top two choices for the position were (1) Michael Hauske (white male) and (2) Nathan Draper (white male).  AA0260–62. Plaintiff was not selected because he interviewed poorly in comparison to the top two candidates.  *Id.*; A0544 (Brown Decl. ¶ 13).  The panel selected Michael Hauske as the successful applicant, and the EEO/AA Officer approved Hauske, after human resources determined that no nepotism conflict existed. A0260–62; A0540 (Winkler Decl. ¶ 21). Michael Hauske has been the Maintenance Engineer for the Canal District since July 2021.

Plaintiff grieved his failure to promote under the Merit Rules, alleging the selection process was discriminatory and constituted gross abuse of discretion, but ultimately, his grievance was denied. A0306; A0310.

### V.    <u>Plaintiff's Administrative Charges</u>

On July 23, 2018, Plaintiff submitted a completed intake questionnaire to the Delaware Department of Labor ("DDOL") Office of Anti-Discrimination.  A0312-318.

On November 8, 2018, Plaintiff dually-filed a charge of discrimination to the DDOL and the U.S. Equal Employment Opportunity Commission ("EEOC"), complaining that his failure to be promoted in 2018 was the result of racial discrimination. A0319. DDOL communicated with DHR to confirm receipt of the dually-filed charge on June 11, 2019.

On September 10, 2021, DDOL issued a Notice of Reasonable Cause Determination due to DelDOT's failure to submit a position statement, and provided a Right to Sue Notice on the

2018 failure to promote claim. A0325–332. The EEOC issued a right to sue notice for the 2018 failure to promote claim on November 19, 2021. A0333-34.

On April 26, 2022, Plaintiff dually-filed a charge of discrimination with the DDOL and EEOC, complaining that his failure to be promoted in 2018, 2019, and 2021 was a "continuing" discriminatory and retaliatory action creating a disparate impact. A0334-36. Two days later, Plaintiff submitted a DDOL intake questionnaire. A0337–46. The EEOC acknowledged the dual-charge filing on November 7, 2022. A0347.

On December 12, 2022, the DDOL issued Plaintiff a right to sue on its 2018, 2019, and 2021 charge filed in April 2022, and the U.S. Department of Justice followed with its own right to sue notice on January 13, 2021. A0348-49; A0352.

## ARGUMENT

### I.   LEGAL STANDARDS.

#### A.   Summary Judgment Standard.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] factual dispute is genuine only where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Carter v. Wesley*, 2020 WL 838310, at *2 (D. Del. Feb. 20, 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). The mere existence of a factual dispute is insufficient to preclude summary judgment: there must be a dispute over a material fact that would affect the outcome of a suit under the governing law. *Liberty Lobby*, 477 U.S. at 248. Furthermore, the "nonmoving party must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Carter*, 2020 WL 838310, at *2 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The non-

7

moving party's failure to offer colorable or significantly probative evidence for an essential element on which it has the burden of proof entitles the moving party to summary judgment." *Subh v. Wal-Mart Stores East, LP*, 2009 WL 866798, at *10 (D. Del. Mar. 31, 2009).

### B.      The *McDonnell Douglas* Burden-Shifting Framework.

Title VII claims for racial discrimination and retaliation based on race or color are governed by the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). Under *McDonnell Douglas*, the analysis proceeds in three steps. First, the plaintiff carries the burden at the summary judgment stage to produce *prima facie* evidence of the complained-of discrimination or retaliation. *Id.* at 802. Once the plaintiff meets his burden, the employer can still prevail on summary judgment if it articulates a legitimate, non-discriminatory reason for the alleged adverse action. *Id.* at 802–03. Finally, the burden shifts back to the plaintiff to establish the employer's articulated rationale is pretextual. *Id.* at 804.

### II.      STATUTORY BARS TO PLAINTIFF'S TITLE VII CLAIMS

Before bringing an action under Title VII, Plaintiff must file a charge of discrimination with the EEOC. *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 963 (3d Cir. 1978) (citing *McDonnell Douglas*, 411 U.S. 792 (1973)) ("The filing of a charge with the [EEOC] by an aggrieved party and the receipt of a notice of the right to sue are jurisdictional prerequisites to a civil action under Title VII."). "[A] fundamental aim of the pre-suit requirements is to 'give prompt notice to the employe' and 'encourage the prompt processing of all charges of employment discrimination.'" *Simko v. United States Steel Corp*, 992 F.3d 198, 207 (3d Cir. 2021) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002)). Here, Plaintiff failed to file a charge of discrimination with the EEOC regarding the 2019 promotion, and consequently, never received a

right to sue notice on his 2019 claims. Plaintiff's failure to exhaust his administrative remedies available under Title VII is fatal to his claims.

Plaintiff's attempt to amend his 2018 Charge to include his 2019 failure to promote claim does not save his claim. *See* A0321–22. First, nothing in the record demonstrates that Plaintiff's 2018 Charge was accepted as amended by either the DDOL or the EEOC, or that the State was put on notice of Plaintiff's new claims.[3]  Additionally, the DDOL Final Determination and Right to Sue Notice only references the 2018 "chosen candidate Mr. B. Schilling" and makes no mention of the 2019 promotion. A0325. Even if the DDOL or EEOC did accept Plaintiff's improper amendment, the 2019 claims would still fail, as "[t]he Supreme Court and Third Circuit have made clear that discrimination resulting in an employee's failure to be promoted is a discrete act of discrimination which must be separately alleged in a new EEOC Charge." *Hamilton v. Albert Einstein Healthcare Network*, 2022 WL 407638, at *4 (E.D. Pa. Feb. 10, 2022) (citing *Nat'l R.R.*, 536 U.S. at 114; *Noel v. The Boeing Co.*, 622 F.3d 266, 270 (3d Cir. 2010) (emphasis added)). Plaintiff failed to file a separate EEOC charge for his 2019 failure to promote claim and therefore, such claims are not properly before this Court.

Nor does Plaintiff's 2021 Charge save his 2019 failure to promote claim.  Although Plaintiff indicated on his 2021 Charge that his failure to be promoted in 2018, 2019, and 2021 was "continuing in nature" and "created a disparate impact," the continuing violation doctrine does not apply to failure to promote claims because an alleged failure to promote is a discrete act. *Hamilton*, 2022 WL 407638, at *4 (citing *Nat'l R.R.*, 536 U.S. at 114) (rejecting the continuing violation theory when plaintiff alleged two instances of a failure to promote occurring nearly two years

---

[3] Correspondence between DDOL and Plaintiff indicates that the State was on notice of Plaintiff's 2018 Charge as filed (A0320) but nothing in the record demonstrates that the State was on notice that Plaintiff attempted to add complaints unrelated to the 2018 Charge.

apart).  Additionally, Plaintiff's attempt to resurrect his 2018 failure to promote claim by including it in his 2021 Charge and adding a new retaliation claim and disparate impact claim is likewise not permitted under the continuing violations theory. The law is clear: the continuing violation doctrine "only applies when the alleged discriminatory acts are not individually actionable, but when aggregated may make out a hostile work environment claim" and does not permit "discrete discriminatory acts that are actionable on their own [to] be aggregated under a continuing violation theory." *McCann v. Astrue*, 293 Fed. Appx. 848, 850 (3d Cir. 2008).

Accordingly, Plaintiff's 2019 failure to promote claims in Count I, III, and V, as well as his 2018 failure to promote claims under Count III and V should be dismissed.

## III.   PLAINTIFF CANNOT ESTABLISH DELDOT VIOLATED TITLE VII (COUNTS I, III, V).

### A.   <u>Failure to Promote</u>

In Count I, Plaintiff contends DelDOT's denial of his applications for promotion to Maintenance Engineer in 2018, 2019, and 2021 were due to racial discrimination.  Under the *McDonnell Douglas* framework, Plaintiff must establish a *prima facie* case that: "(a) he belongs to a protected category; (b) he applied and was qualified for a promotion; (c) despite his qualifications, he was denied the promotion; and (d) other employees of similar qualifications who were not members of the protected group were promoted at the time the plaintiff's request for promotion was denied."  *Lewis v. State of Del. Dep't of Pub. Instruction*, 948 F. Supp. 352, 358 (D. Del. 1996).  For purposes of this motion, DelDOT does not dispute that Plaintiff has established a *prima facie* case.

Nonetheless, DelDOT meets its "relatively light burden" under *McDonnell Douglas* "by articulating a legitimate reason for the unfavorable employment decision."  *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).  The record demonstrates that in both 2018 and 2021, DelDOT did

not promote Plaintiff because during his interview, Plaintiff failed to answer the panel's questions, could not provide examples highlighting his abilities to succeed in the position, and did not demonstrate leadership skills. *See* A0248–59; A0544 (Brown Decl. ¶ 13).  A superior interview is a legitimate, non-discriminatory reason for not promoting an employee. *Geltzer v. Virtua West Jersey Health Systems*, 804 F.Supp.2d 241, 248 (D.N.J. 2011).  However, in 2019, there was a closer call as the hiring panel was split between Plaintiff and Garcia following the interviews, which prompted the hiring manager to reach out to their supervisors, who happened to both be Schilling and Canning. Ultimately, DelDOT did not promote Plaintiff based on this reference check. A0203–04.  Schilling and Canning believed Garcia was outperforming Plaintiff in areas where Plaintiff was struggling, and had previously directed Plaintiff needed to be more involved "on the operations side of the house," which was notable to the panel as Plaintiff struggled to answer questions about operations during his interview.  The panel's reliance on Schilling and Canning's assessments of the candidates is also a legitimate, non-discriminatory reason for not promoting an employee.  *Steward v. Sears Roebuck & Co.*, 231 F. App'x 201, 210 (3d Cir. 2007).

Detrimental to his claims, Plaintiff cannot establish that the reasons for selecting other candidates over him were pretext for intentional, racial discrimination.  "To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765.  Rather, Plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the

employer did not act for the asserted non-discriminatory reasons." *Id.* (internal quotation marks and citations omitted).

Finney may believe that his interview responses in 2018 and 2021 were just as good, if not better, than the selected candidates' responses, but that is insufficient to show DelDOT was motivated by discriminatory animus when choosing not to promote him. *Alcantara v. Aerotek, Inc.*, 765 F. App'x 692, 697 (3d Cir. 2019) ("It is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance." (citation omitted)).

Nor is there discriminatory animus in the 2019 post-interview decision. Plaintiff complains that he did not list Canning as a reference on his reference sheet, but Gilliam as the hiring manager had discretion to gather information to help her make a final decision.[4]  A0036; *see also* A0538 (Winkler Decl. ¶ 11). No reasonable factfinder could conclude that Gilliam's outreach to two managers who directly supervised the two final candidates was motivated by racial animus against Finney.  Furthermore, Plaintiff complains that neither Schilling nor Canning ever gave him feedback that they expected him to be more involved in "day to day operations," despite informing Gilliam that they had.  But even if so, Gilliam and the other hiring panel members reasonably relied on the feedback from Schilling and Canning to make an informed hiring decision. When an employer "relies on particular criticisms as a reason for the adverse action, 'the issue is not whether the criticisms of the plaintiff were substantiated or valid. . . the question is whether the employer *believed* those criticisms to be accurate and *actually relied upon them*.'" *Steward*, 231 F. App'x 201 at 210 (quoting *Fuentes*, 32 F.3d 759 and 766–67) (emphasis added).  Moreover, a plaintiff

---

[4] Even assuming arguendo that Gilliam's outreach to Canning was a way to somehow manipulate the promotional process, that fact alone does not suggest that the panel made hiring decisions based upon plaintiff's race or national origin. *Luta v. Delaware*, 847 F. Supp. 2d 683, 690 (D. Del. 2012).

cannot establish pretext by showing he received "some favorable comments in some categories or has, in the past, received some good evaluations." *Id.* (citing *Ezold v. Wolf, Block, Scorr & Solis-Cohen*, 983 F.2d 509, 528 (3d Cir. 1992)).  He likewise cannot establish pretext by pointing to his commendation "in categories the [employer] says it did not rely upon in making the employment decision at issue." *Id.* (citing *Ezold*, 983 F.2d 509, at 531).  Instead, "the employee's performance in the categories that the employer deemed relevant to the employment decision" must be considered. *Id.*

Plaintiff's complaint that the hiring panels in 2019 and 2021 included members who had been called as witnesses in his 2018 grievance before the MERB also does not move the needle. There is no evidence that Finney's prior grievance prompted hiring panel members to view his applications unfavorably, to the point of suggesting racial animus.  And given the limited pool of DelDOT employees qualified to assess candidates for a management position, it is reasonable that participation in prior grievances would not automatically disqualify an individual from serving on a hiring panel interviewing a grievant.

Finally, Plaintiff's reliance on Canning's two alleged racist comments about Plaintiff's skin color and hair—which by Plaintiff's own account, were made before the 2018 promotional process—is not probative of whether the hiring panel's decision was a pretext for race discrimination. *Ezold*, 983 F.2d at 545 (3d Cir. 1992) ("Stray remarks . . . by decision makers unrelated to the decision process are rarely given great weight, **particularly if they were made temporally remote from the date of the decision**." (emphasis added)). Moreover, a reasonable factfinder would not conclude that a joke about thick hair or a comment about being "dark" while sitting in a room lit with one light was motivated by a discriminatory animus. *See* A0508 (Pltf. Dep. 175:16–176:2; 176:23–177:3).  *Davis v. City of Newark*, 2008 WL 2973912, at *2 (3d Cir.

13

2008) ("comments that cannot be reasonably construed as invoking any racial feeling do not support Title VII liability").

For these reasons, Plaintiff cannot meet his burden in proving pretext and rebutting DelDOT's legitimate, nondiscriminatory reasons for denying the promotions in 2019 and 2021, and therefore, his claims should be dismissed.

### B.   Retaliation

In Count III, Plaintiff claims DelDOT retaliated against him based on his race or color by failing to promote him to Maintenance Engineer in 2019 and 2021 due to his reports of racial discrimination in 2018 and 2019.  "To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that '(1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action.'"  *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).  To establish causation, "[t]he protected activity must be the 'but-for' cause of the defendants' alleged retaliatory action."  *Flores v. Danberg*, 84 F. Supp. 3d 340, 350 (D. Del. 2015).

Plaintiff cannot establish a *prima facie* case for retaliation.  DelDOT does not dispute that Plaintiff engaged in protected activity by filing grievances under the MERB rules and reporting discrimination to DDOL and that adverse employment actions were taken when he did not receive promotions in 2019 and 2021.[5]  But Plaintiff cannot establish a causal connection.

---

[5] Plaintiff does not allege DelDOT retaliated against him when it did not promote him in 2018. D.I. 23 ¶¶ 135, 136.

14

With respect to the 2019 promotion process, Plaintiff has not proffered any evidence that DelDOT declined to promote him due to his filing a grievance and DDOL complaint as a result of the failed 2018 promotion.  Indeed, Plaintiff was one of two finalists for the position out of seven interviewees.  There is no evidence that Gilliam and Urbanek sought to retaliate against him having been called as witnesses in the 2018 grievance process.  Even though Plaintiff's complaints, the grievance processes, and the denial occurred within the same general time frame, "temporal proximity alone is insufficient" to establish causation.  *Flores*, 84 F. Supp. 3d at 350; *see also Lorah v. Tetra Tech, Inc.*, 541 F. Supp. 2d 629, 636 (D. Del. 2008) ("To be 'unusually suggestive' of retaliatory motive, the temporal proximity must be immediate."); *Conklin v. Warrington Twp.*, 2009 WL 1227950, at *3 (M.D. Pa. Apr. 30, 2009) ("[T]emporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence.").

And despite Plaintiff's own speculations and suspicions, there is no evidence that Schilling and Canning were motivated to provide criticism of him in retaliation for the 2018 complaints.  In fact, Schilling and Canning provided ratings of Plaintiff that were "fair" or "good."  Although not "excellent" ratings, as Probert observed, "there is nothing overly negative" in the references for Finney.  A0201.  Importantly, Plaintiff has not demonstrated that Schilling and Canning would have any indication that their assessments of Finney and Garcia would be a decisive factor in the hiring outcome.  Furthermore, Schilling had no involvement in Plaintiff's grievance and complaints.  It is also implausible that Canning would suddenly decide to prevent Plaintiff from attaining a promotion in 2019 when Plaintiff had filed a grievance after being denied the same promotion in 2014 and there is no evidence Canning mistreated Plaintiff in the intervening years.  Indeed, Canning signed off on years of performance evaluations rating Plaintiff as "exceeds

expectations," including during the same month Finney's grievance over the 2014 promotion was heard.

Plaintiff also fails to establish any causal connection between the 2018 and 2019 complaints and grievance processes and his failure to be promoted years later in 2021. The only evidence of retaliation Plaintiff has offered is his own speculation that Canning "tanked any opportunity [he] would have with the panel." Finney Depo 180:21-24. But again, no reasonable factfinder could conclude Canning interfered with Finney's promotion prospects for complaining about the 2018 and 2019 denials yet endorsed Finney's performance for years after he made the same complaint in 2014. It is also reasonable that as the Canal District Engineer, Canning would participate on a hiring panel to select the Canal District Maintenance Engineer. Based on the interviews, the hiring panel made a supported decision to select its top two choices for the position. All throughout, Finney remained as Assistant Maintenance Engineer and his job duties never changed. Finney Depo 199:14-15.

Finally, even if Plaintiff established a *prima facie* case, he cannot rebut DelDOT's legitimate, nondiscriminatory reasons for denying the promotions in 2019 and 2021. *See* Section III.A. *supra.*

## C. Disparate Impact

In Count V, Plaintiff claims DelDOT's employment promotion and hiring practices, by emphasizing the interview process, have a disparate impact on racial minorities and Asian individuals. To establish a *prima facie* case for disparate impact under Title VII, the plaintiff must show that the "application of a facially neutral standard has resulted in a significantly discriminatory hiring pattern." *Lanning v. Southeastern Pa. Transp. Auth.*, 181 F.3d 478, 485 (3d Cir. 1999). The burden then "shifts to the employer to show that the employment practice is 'job

related for the position in question and consistent with business necessity.'" *Id.* (quoting 42 U.S.C. § 2000e-2(k)).   The burden then shifts back to the plaintiff to establish "that an alternative employment practice has a less disparate impact and would also serve the employer's legitimate business interest." *Id.*

Plaintiff has not established a *prima facie* case for disparate impact.  Plaintiff is required "to prove a significant statistical disparity and to 'demonstrate that the disparity he complains of is the result of one or more of the employment practices that he is attacking.'"  *N.A.A.C.P. v. N. Hudson Regional Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011) (quoting *Newark Branch, N.A.A.C.P. v. City of Bayonne*, 134 F.3d 113, 121 (3d Cir. 1998)) (cleaned up).  Plaintiff does not establish a *prima facie* case "simply by showing a bottom line racial imbalance in the work force." *Green v. USX Corp.*, 896 F.2d 801, 804 (3d Cir. 1990).  Rather, "[i]n order to make the statistical link between the practice and the racially unequal result, courts require statistical analysis or expert testimony."  *McFadden v. Whole Foods Market Group, Inc.*, 2021 WL 736899, at *10 (E.D. Pa. Feb. 25, 2021).  "In showing statistical disparity, the relevant comparison is 'between the racial composition of the at-issue jobs and the racial composition of the qualified population in the relevant labor market.'"  *Hudson*, 665 F.3d at 477 (quoting *Bayonne*, 134 F.3d at 121) (cleaned up).  Here, Plaintiff failed to proffer any expert testimony or statistical analysis, nor has he provided any analysis of the relevant comparator population groups.  The only evidence Plaintiff points to is that more white individuals have served in Engineer Program Manager II positions or as Maintenance Engineer than non-white individuals.  But that "bottom line racial imbalance" is insufficient to establish a *prima facie* case.  Furthermore, Plaintiff does not attempt to analyze the underlying racial composition of the applicable labor force and applicants for the Maintenance Engineer position, much less establish statistical significance.

17

Even if Plaintiff established a *prima facie* case, DelDOT's practice of basing the final selection of Maintenance Engineer on a panel interview is based on business necessity. The Maintenance Engineer position is a management position that requires not only technical expertise, but the ability to exercise judgment in executing large-scale projects, overseeing personnel, and making critical decisions in high-stress situations. A0542 (Brown Decl. ¶ 6). The interview provides the hiring panel an important tool to assess candidates' judgment and abilities and potential to succeed as Maintenance Engineer. Importantly, the interviews are not free-flowing personal conversations, and instead, follow a structured format. *See* A0022–24; A0536–37 (Winkler Decl. ¶¶ 8, 9). The hiring manager develops questions designed to assess candidates' potential to meet the demands of the Maintenance Engineer role and receives approval of those questions. The hiring manager convenes a panel that must also receive approval; panel members must be diverse as well as be qualified to assess candidates for the specific position. Candidates who meet the minimum qualifications of engineering job experience and licensure are selected for interviews. Finally, the hiring panel asks all candidates the same interview questions. Inevitably, by design an interview will include some level of subjective assessment. But subjectivity does not negate business necessity. *See, e.g.*, *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1220 (3d Cir. 1988) (recognizing an employer's "right to make business judgments on employee status, particularly when the decision involves subjective factors . . . that the [employer] deems essential to high-level executive positions"); *Scott v. Parkview Memorial Hosp.*, 175 F.3d 523, 525 (7th Cir. 1999) ("Unless the evidence demonstrates that an open-ended process was used to evade statutory anti-discrimination rules, subjectivity cannot be condemned."). As Plaintiff has failed to meet his burden in establishing disparate impact, Count V should be dismissed.

18

## IV.    THE STATE LAW CLAIMS FAIL (COUNTS II, IV, V).

Plaintiff asserts violations of the DDEA on the same exact bases as his claims for Title VII violations.  But having elected to pursue their claims in federal court, Plaintiff cannot maintain both the federal and state law claims.  *See* 19 *Del. C.* § 714; *Esaka v. Nanticoke Health Servs., Inc.*, 752 F. Supp. 2d 476, 481 (D. Del. 2010) ("The DDEA bars a plaintiff from simultaneously seeking remedies for employment discrimination under both federal and state law in federal court."); *Martinez v. Dep't of Homeland Sec./Div. of the State Police*, 2019 WL 1220305, at *1 n.1 (D. Del. Mar. 15, 2019) ("A plaintiff . . . may not seek relief under both Title VII and the Delaware state discrimination statute.").  Thus, Plaintiff's DDEA claims must be dismissed.[6]

### CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant its motion for summary judgment and dismiss the Complaint with prejudice.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

*/s/ Victoria R. Sweeney*
Victoria R. Sweeney (#6586)
Deputy Attorney General
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400
Victoria.Sweeney@delaware.gov
*Attorney for Defendant*

Date: April 12, 2024

---

[6] Even if the DDEA did not bar Plaintiff's claims, they would nevertheless fail for the same reasons as under Title VII.  *See Hyland v. Smyrna Sch. Dist.*, 608 F. App'x 79, 83 n.5 (3d Cir. 2015). Moreover, under 28 U.S.C. § 1367(c), this Court should decline to exercise supplemental jurisdiction over the state law claims where the federal claims fail.