## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DONALD A. FINNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 1:22-cv-01059-SRF |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| THE STATE OF DELAWARE, | ) | |
| DEPARTMENT OF TRANSPORTATION | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff, Donald A. Finney, by and through his attorneys, Allen & Associates, files this

Brief in Opposition to Defendant, State of Delaware, Department of Transportation's Motion for

Summary Judgment pursuant to Fed. R. Civ. P. 56(a).


**ALLEN & ASSOCIATES**

*/s/ Michele D. Allen*
Michele D. Allen (#4359)
Delia A. Clark (#3337)
4250 Lancaster Pike, Suite 230
Wilmington, DE 19805
(302) 234-8600
(302) 397-3930 (fax)
michele@allenlaborlaw.com
delia@allenlaborlaw.com
Dated: April 26, 2024                          *Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................... ii

NATURE AND STAGE OF PROCEEDINGS ............................................................................ 1

SUMMARY OF THE ARGUMENT ........................................................................................... 1

LEGAL ARGUMENT .................................................................................................................. 2

    I.      Plaintiff's discrimination claims for retaliation and the failure to promote in 2019 under Title VII and the DDEA have been exhausted, were timely and properly filed. ...................................................................................................................... 2

    II.    There exist genuine issues of material fact concerning the "proffered" legitimate reasons for the selection of candidates other than Plaintiff in 2018, 2019 and 2021 ................................................................................................................... 7

    III.   Plaintiff has sufficient evidence to prove a causal connection between the engagement in a protected activity and the repeated and insidious acts of retaliation by Defendant ......................................................................................... 14

    IV.   Plaintiff's may offer alternative remedies under the DDEA and Title VII .......... 19

CONCLUSION ........................................................................................................................... 19

# **TABLE OF AUTHORITIES**

**Cases**

*Aman v. Cort Furniture Rental Corp.*,
   85 F.3d 1074 (3d Cir. 1996) ................................................................. 17

*Andrews v. City of Phila.*,
   895 F.2d 1469 (3d Cir. 1990) ................................................................ 16

*Bernstein v. Nat'l Liberty Int'l Corp.*,
   407 F.Supp.709 (E.D. Pa. 1976). ............................................................ 6

*Brangman v. AstraZeneca, LP*,
   952 F.2d 710 (E.D. Pa. 2013) ............................................................... 19

*Carvalho-Grevious v. Del. State Univ.*,
   851 F.3d 249 (3d Cir. 2017). ................................................................ 17

*Daoud v. City of Wilmington*,
   894 F. Supp. 2d 544 (D. Del. 2012). ......................................................... 2

*E.E.O.C. v. St. Michael Hosp. of Franciscan Sisters Milwaukee, Inc.*,
   6 F. Supp. 2d 809 (E.D. Wis. 1998) ...................................................... 3, 4

*E.E.O.C. v. United Parcel Serv.*,
   94 F.3d 314 (7th Cir.1996) .................................................................... 4

*Edelman v. Lynchburg Coll.*,
   535 U.S. 106 (2002). ........................................................................... 4

*Ezold v. Wolf*,
   928 F2d. 509 (3d Cir. 1992) ................................................................. 13

*Farrell v. Planter's Lifesavers Co.*,
   206 F.3d 271 (3d Cir. 2000). ........................................................... 14, 18

*Foust v. FMC Corp.*,
   962 F. Supp 650 (E.D. Pa. 1997). ............................................................ 5

*Fuentes v. Perskie*,
   32 F. 3d 759 (3d Cir. 1994) ................................................................. 13

*Gooding v. Warner–Lambert Co.*,
744 F.2d 354 (3d Cir.1984) .............................................................................. 6

*Hicks v. ABT Associates, Inc.*,
572 F2d 960 (3d Cir. 1978) ........................................................................... 4, 5

*Howze v. Jones & Laughlin Steel Corp.*,
750 F. 2d 1208 (3d Cir. 1984) ........................................................................... 5

*Iadimarco v. Runyon*,
190 F. 3d 151 (3d Cir. 1999) ....................................................................... 13, 14

*James v. Sutliff Saturn, Inc.*,
468 Fed. App'x 118 (2012) ................................................................................ 4

*Kochmar v. SunGuard Data System*,
109 F.3d 179 (3d Cir. 1997) ............................................................................ 15

*Lauren W. ex rel. Jean W. v. DeFlaminis*,
480 F.3d 259 (3d Cir.2007) ............................................................................. 18

*Lipschultz v. Holy Family Univ.*,
2017 WL 1331731 (E.D. Pa. Feb. 17, 2017) ..................................................... 18

*Money v. Provident Mut. Life Co.*,
2004 WL 1243739 (E.D. Pa. Jun. 3, 2004) ......................................................... 3

*Moore v. City of Philadelphia*,
461 F.3d 331 (3d Cir. 2006) ....................................................................... 13, 15

*Nat'l R.R. Passenger Corp., v. Morgan*,
536 U.S. 101 (2002) ......................................................................................... 6

*Ostapowicz v. Johnson Bronze Co.*,
541 F.2d 394 (3d Cir.1976) ............................................................................... 5

*Prewitt v. Walgreen's Co.*,
2012 WL 4364660 (E.D. Pa. Sept. 25, 2012) ...................................................... 4

*Reavis v. The Church Farm Sch.*,
2004 WL 828364 (E.D. Pa. Mar. 31, 2004) ......................................................... 2

*Robinson v. Se. Pennsylvania Transp. Auth., Red Arrow Div.*,
    982 F.2d 892 (3d Cir. 1993) ................................................................................ 17

*Rodríguez-Cardi v. MMM Holdings, Inc.*,
    936 F.3d 40 (1st Cir. 2019) ................................................................................ 14

*Schouten v. CSX Transp., Inc.*,
    58 F. Supp. 2d 614 (E.D. Pa. 1999) ...................................................................... 6

*Spady v. Wesley College*,
    2010 WL 3907357 (D. Del. Sept. 29, 2010) ........................................................ 19

*Taite v. Bridgewater State Univ., Bd. of Trustees*,
    999 F. 3d 86 (1st Cir. 2021) ................................................................................ 14

*Vermeer v. Univ. of Delaware*,
    2024 WL 81291 (D. Del. Jan. 8, 2024) ................................................................ 18

*Webb v. City of Phila.*,
    562 F.3d 256 (3d Cir.2009) ................................................................................... 5

*White v. Westinghouse Elec. Co.*,
    862 F. 2d 56 (3d Cir. 1989) ................................................................................ 13

*Williams v. Bristol Myers Squibb, Co.*,
    85 F.3d 270 (7th Cir. 1996) ................................................................................ 13

*Woodson v. Scott Paper Co.*,
    109 F.3d 913 (3d Cir. 1997) ................................................................................ 17

*Wooten v. City of* Wilmington,
    2021 WL 411707 (D. Del. Feb. 5, 2021) .............................................................. 19

*Zelinski v. Pennsylvania State Police*,
    108 Fed. App'x 700 (3d Cir. 2004) ...................................................................... 14

**Statutes**

19 *Del. C.* §711 *et seq.* ............................................................................................................ 1

19 *Del.C.* § 714(c). .................................................................................................................. 19

29 C.F.R. §1601.12(b). ............................................................................................................. 4

42 U.S.C. § 2000e *et seq.* ........................................................................................................ 1

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff Donald A. Finney (hereinafter, "Plaintiff" or "Finney"), worked as an engineer for Defendant, State of Delaware – Department of Transportation, (hereinafter, "Defendant" or "DOT"), beginning in 1999. In 2014, Finney was promoted to Assistant Maintenance Engineer in the Canal District. He sought a promotion for the Maintenance Engineer position in 2018 and the subsequent events lead to the institution of this litigation on August 16, 2022. The Complaint was amended on January 25, 2023. Plaintiff seeks recovery for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, ("Title VII"), and the Delaware Discrimination in Employment Act, 19 *Del. C.* §711 *et seq.*, ("DDEA"), for discrimination based on race, color and retaliation under both of these statutes. On February 8, 2023, Defendant filed its Answer to Plaintiff's Amended Complaint with Separate Defenses. Discovery has been concluded and Defendant has filed a Motion for Summary Judgment. Plaintiff submits this response in opposition to Defendant's Motion for Summary Judgment.[1]

## SUMMARY OF THE ARGUMENT

I.      The administrative remedies for Plaintiff's discrimination claims for retaliation and the failure to promote in 2019 under Title VII and the DDEA have been exhausted and were timely and properly filed.

II.     Genuine issues of material fact exist concerning the "proffered" legitimate reasons for the selection of candidates other than Plaintiff in 2018, 2019 and 2021.

III.    Plaintiff has sufficient evidence to prove a causal connection between the engagement in a protected activity and the repeated and insidious acts of retaliation by Defendant.

---

[1] Plaintiff files no opposition to the disparate impact argument in Count V of the Amended Complaint.

1

IV.     Plaintiff may offer alternative remedies under the DDEA and Title VII.

## LEGAL ARGUMENT

**I.   Plaintiff's administrative remedies to his discrimination claims for retaliation and the failure to promote in 2019 under Title VII and the DDEA have been exhausted and were timely and properly filed.**

"Title VII contains administrative remedies and procedures that a litigant must exhaust prior to asserting a private cause of action under the Act." *Daoud v. City of Wilmington*, 894 F. Supp. 2d 544, 552 (D. Del. 2012). In addition, "prior to bringing a complaint for racial discrimination, a prospective plaintiff must file a charge with the EEOC and obtain a right-to-sue letter." *Reavis v. The Church Farm Sch.,* 2004 WL 828364, at *2 (E.D. Pa. Mar. 31, 2004).

It is undisputed that Plaintiff filed a timely Charge of Discrimination with the Delaware Department of Labor ("DDOL") on November 8, 2018. A319.[2] On June 11, 2019, prior to a final decision from the DDOL, Plaintiff contacted the DDOL regarding an addendum of retaliation and continued discrimination based on the failure to promote in 2019 to Plaintiff's Charge of Discrimination. A322-24. Plaintiff's amendment to his Charge included additional facts to support his claims of race, color, discrimination as well as retaliation due to the denial of the 2019 promotion. On September 10, 2021, almost three years after filing the initial charge and more than two years after amending the charge, Plaintiff received a Reasonable Cause Determination and his first Right to Sue from the DDOL, followed by the EEOC letter on November 19, 2021. A325-332.

On June 10, 2019, Plaintiff sent the DDOL several documents, including the 2019 Grievance form and Step II decision as well as the Step III decision for 2018. PLA004-005.[3] In

---

[2] "A" refers to Defendant's Appendix [D.I. 55].
[3] "PLA" refers to Plaintiff's Appendix filed contemporaneously herewith.

the 2019 Grievance Form, Plaintiff asserted that the denial of the 2019 promotion was in retaliation and based on race discrimination for the prior grievance of the 2018 promotional process which included claims of discrimination. A282-285.

The following day, on June 11, 2019, Plaintiff advised Administrative Specialist Cindy Glazier that he wished to "add an addendum" to his current charge concerning the recent denial of a promotion and the rationale identified a "dubious reference" and "response to an extended question." A322-24. Plaintiff noted Defendant's unfair treatment. *Id*. Plaintiff concluded with, "please let me know if you need this in a different form, have questions or need more information." A322. Glazier, responded in approximately forty-five minutes, "I acknowledge receipt of your email below and have noted same in your file."  A3021. This June 11, 2019, email was timely to the March 22, 2019, denial of the promotion.  PLA009. Plaintiff's amendment to the DDOL was made well before conciliation in September 2021. PLA 224-30.  Note that the Plaintiff included copies of his grievance, the Step II decision and Step III Grievance submission to the DDOL with the amendment. PLA001-006.

It is well settled that a charge of discrimination timely filed with the EEOC/DDOL may be enlarged to "include" other alleged discrimination that is reasonably related to the discrimination set forth in the timely charge. *Money v. Provident Mut. Life Co.*, 2004 WL 1243739, at *2 (E.D. Pa. Jun. 3, 2004) (citing *E.E.O.C. v. St. Michael Hosp. of Franciscan Sisters Milwaukee, Inc.*, 6 F. Supp. 2d 809 (E.D. Wis. 1998)). The EEOC regulations provide that a charge may be amended to "….clarify or amplify allegations made therein. Amendments alleging additional acts which comprise of unlawful practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received. In such a case there is no requirement that the charge be "redeferred." (emphasis added). *Edelman v. Lynchburg Coll*., 535 U.S. 106, 110 n.2

(2002) (citing 29 C.F.R. §1601.12(b)). *See also*, *Prewitt v. Walgreen's Co.,* 2012 WL 4364660, at

\*5 (E.D. Pa. Sept. 25, 2012). Plaintiff's amendment Charge preceded the right to sue letter by more

than two years thus, before the cut-off date to amend. The purpose of the charge is to begin the

investigatory and conciliatory procedures with the EEOC. It is not the scope of the charge but the

scope of a reasonable investigation of that charge. *St. Michael Hosp. of Franciscan Sisters*

*Milwaukee, Inc.*, 6 F. Supp. 2d at 819 (citing *E.E.O.C. v. United Parcel Serv.,* 94 F.3d 314, 318

(7th Cir.1996)).

Plaintiff reasonably attempted to file an amendment to his charge and inquired about a

different form. The DDOL's response advised Plaintiff that the file was "noted." There is no

question that Plaintiff, *pro se* at that time, had done all that he "reasonably" could in order to amend

the charge in accordance with the DDOL and EEOC regulations. The "statutory period of

providing the EEOC with an opportunity to reconcile the grievance has been fulfilled." *Hicks v.*

*ABT Associates, Inc.*, 572 F2d 960, 964 (3d Cir. 1978). Penalizing the plaintiff in such a

circumstance would frustrate the intent of the statute for another's mistakes. The facts in this case

are similar to those in *James v. Sutliff Saturn, Inc.,* 468 Fed. App'x 118, 122-23 (2012). In *Jones*,

the plaintiff requested to amend the charge and was directed to complete a questionnaire by a

PHRC representative. *Id.* The questionnaire was completed and returned. *Id.* No further

communication was received until the right to sue letter. *Id.* The Third Circuit reiterated that the

employees should not be penalized for the actions of the "commission." *Id.* at 122 (citing *Hicks*,

572 F.2d at 964-65). The Third Circuit ruled Jones reasonably believed his amendment was being

processed and thus satisfied the statutory policy for PHRC to reconcile his grievance. *Id.* at 123.

The same is true in the present case.

4

When an issue arises during the pendency of the investigation, is brought to the attention of EEOC investigator before the right to sue letter is issued, and the investigator responds to it before the letter is issued, then the claim is preserved and properly raised. *Foust v. FMC Corp.*, 962 F. Supp 650, 656 (E.D. Pa. 1997).  Here, the scope of Plaintiff's charge reasonably would include retaliation and information provided to the DDOL about the denial of another promotion for pretextual reasons. Notably, in this case the investigation took almost three years. Retaliation following a charge being filed can reasonably *be expected to grow out of the charge of discrimination.*" *Webb v. City of Phila.*, 562 F.3d 256, 263 (3d Cir.2009) (emphasis added); *Howze v. Jones & Laughlin Steel Corp.,* 750 F. 2d 1208, 1212 (3d Cir. 1984). A determination or investigation into retaliation is of "no consequence… the investigation does not set the outer limits on the scope of the civil complaint as long as a reasonable investigation would have encompassed new claims."  *Howze*, 750 F. 2d at 1212 (citations omitted). Finney's Complaint reasonably encompasses the retaliation and failure to promote in 2019.

Moreover, the Third Circuit Court of Appeals has held that "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Webb*, 562 F.3d at 263 (emphasis added). Furthermore "the preliminary requirements for a Title VII action are to be interpreted in a nontechnical fashion." *Ostapowicz v. Johnson Bronze Co*., 541 F.2d 394, 398 (3d Cir.1976). The scope of the original charge is liberally construed because same are "most often drafted by one who is not well versed in the art of legal description." *Hicks*, 572 F.2d at 965. Thus, even without the amendment, "if the allegations made in the complaint filed in this Court could be reasonably expected to grow out of" those contained ... in the EEOC charge, the pleading of the plaintiff will withstand a motion to dismiss, as the administrative remedies available to plaintiff will have been

exhausted." *Schouten v. CSX Transp., Inc*., 58 F. Supp. 2d 614, 616 (E.D. Pa. 1999). Claims of retaliation for filing the charge are within the category of reasonably related or growing out of the charge. *Bernstein v. Nat'l Liberty Int'l Corp.,* 407 F.Supp.709, 713 (E.D. Pa. 1976). Because EEOC Charges do not have formal pleading requirements, Courts have long been liberal in their interpretation of the scope of such Charges, and routinely allow civil suits concerning types of discrimination other than that specified in the Charge. *See, e.g., Gooding v. Warner–Lambert Co*., 744 F.2d 354, 358–59 (3d Cir.1984) (noting "sound and established policy that procedural technicalities should not be used to prevent Title VII claims from being decided on the merits"). In *Howze*, *supra*, the Third Circuit addressed a factually analogous situation – plaintiff's charge of race discrimination during the promotional process. 750 F. 2d at 1212. The Court permitted plaintiff to amend as the discrimination and retaliation claims were alternative allegations regarding the failure to promote. *Id.* Similarly, an investigation of Plaintiff's failure to promote could and should have included retaliation.

On April 26, 2022, Plaintiff timely filed a second Charge of Discrimination with the DDOL alleging race and color discrimination as well as retaliation from the January 3, 2018, grievance. After filing his first charge, he was subjected to continued retaliatory acts and another denial of a promotion after the initial right to sue letter was issued. Defendant argues that this charge does not preserve the prior retaliation. This is incorrect. An employee may use prior acts deemed time barred as evidence to support a timely claim. *Nat'l R.R. Passenger Corp., v. Morgan,* 536 U.S. 101, 113 (2002). Further, following the grievance and DDOL dual charge filed in 2018, Plaintiff was subjected to a variety of retaliation.  Some examples of the retaliation, include but are not limited to: not being invited to seminar and then criticized for not attending; a performance evaluation which was critical and when shown unsupported, the critical events were deleted, but

the rating not increased; a negative reference with no evidence of coaching on the issue raised; an individual provided a reference who was not identified by Plaintiff; the individuals involved in the 2019 process were involved in the first grievance; requests for an explanation by Plaintiff to his supervisors were ignored; the  subjective evaluation of responses of Plaintiff to interview questions as inferior is unsupported by the notes of the interviewer(s)  and Kevin Canning's involvement in all the promotional processes.  A74; A200-202; A60; PLA250-269; Plaintiff's Counter Statement of Facts Nos. 1-13.  This conduct started in 2018 and continued until after the 2021 promotional denial and thus evidence a continuing violation.

## II.    Genuine issues of material fact exist concerning the "proffered" legitimate reasons for the selection of candidates other than Plaintiff in 2018, 2019 and 2021.

Defendant concedes Plaintiff has established a *prima facie* case of racial discrimination regarding the denial of his application for promotion in 2018, 2019 and 2021. D.I. 53 p. 11. However, Defendant asserts there was a legitimate reason for denying Plaintiff multiple promotions. D.I. 53 p. 10.  Plaintiff submits the reasons proffered by Defendant in selecting other candidates over him were a pretext for intentional, racial discrimination and retaliation.

Defendant asserts that during the interviews plaintiff failed to answer questions, did not highlight his abilities through examples and did not demonstrate leaderships skills. Notably, Defendant relies upon notes of Plaintiff's 2018, 2019 and 2021 interview questions and the declaration of Anne Brown. Additionally, Urbanek testified that many of the answers provided by both gentlemen were "good." Both answered the questions, shared experience and provided examples.  PLA062 41:16-20; PLA069 47:14-22, PLA070 48:15-19; PLA072 50:7-10. The overly generalized and broadly proffered reasons for not selecting Plaintiff were nothing more than a mere pre-text to avoid their intentional discriminatory selection process. The culture at DOT, including a preference and bias for white candidates is apparent. PLA221; PLA234-39; PLA245-

6.  Canning was the hiring manager for the 2018 promotion and was routinely known for favoring and selecting white candidates. PLA247. In fact, he selected white males for the Program Manager II position from 2015 to 2021. PLA244-247. Therefore, Defendant had to craft a reason as to why Plaintiff, with over 18 years of engineering experience within DOT and almost four years as the District Manager, who received exceeds expectations ratings on performance evaluations, was not selected for promotion. Because Defendant knew they could not support their decision with any tangible, concrete, documentary evidence, they relied upon the nebulous and subjective "interview." Canning stated he did not select Plaintiff because he did not meet "his expectations" during the interview.  A266-68. Based upon Canning's track record, it could only be concluded that Plaintiff did not meet "his expectations" related to race/color. While in later proceedings, Canning claimed Plaintiff's interview was "very poor," yet, that conclusion was not supported by the other panel members. A271-276. Another panelist testified at the MERB hearing in October 2018, that the answers of Plaintiff and Schilling were both good. PLA062 41:16-20; PLA069 47:14-22, PLA070 48:15-19; PLA072 50:7-10. Thus, contradicting Defendant's claim that Plaintiff's interview was poor.  In an effort to distinguish the selected white male candidate, the EEO approval form stated Schilling showed vision and leadership during the interview. A126-28. However, Canning admitted none of the questions during the interview concerned vision or leadership. PLA054 32:10-19. For the reasons set forth herein, there is a genuine dispute of material fact as to whether or not Defendant has met its burden of articulating a legitimate, nondiscriminatory reason for not selecting Plaintiff for the 2018 promotion. The weaknesses, implausibility and inconsistencies in Defendant's proffered reason for not selecting Plaintiff and selecting the less experienced, less qualified white male could be found by a reasonable factfinder

8

as unworthy of credence and hence could conclude that Defendant did not act for the reasons asserted and therefore, judgment in favor of Defenant should be denied.

Defendant admits the decision to not select Plaintiff for the 2019 promotion was a close call and ultimately, the decision was made based upon reference check. D.I. 53 p. 11. The proffered reason in 2019 was yet again a mere pre-text for Defendant's intentionally retaliatory conduct. As stated *supra*, Plaintiff engaged in protected activity when he filed a grievance and charge of discrimination related to Defendant's failure to promote him in 2018.  Both Canning and Gilliam were parties to Plaintiff's prior complaint of discrimination, and both acted in concert to ensure Plaintiff did not receive the 2019 promotion, as retaliation. At the conclusion of the 2019 interviews, Gilliam told Plaintiff the other candidate John Garcia "knocked it out of the park," when the evidence suggests it was a closer call in the selection process between Plaintiff and Garcia.  A283-29; PLA167 70-71:23-1. The EEO approval form further notes Plaintiff was the preferred candidate, but for his references. A203-206. Gilliam "stands by" the contents of the form. A533 59:1-4.   Accordingly, the retaliation squarely lies with Gilliam's unauthorized and unsolicited reference check.  The panel decided to check references of both candidates. PLA167 71:10-15. Defendant's approved process is that the hiring managers contact the individuals on the applicant's reference list. *Id*; A538 ⁋ 12, A36. It is undisputed that Gilliam intentionally sought out and obtained a reference from Canning, who was not listed as a reference by Plaintiff, for obvious reasons since Plaintiff had previously filed a grievance alleging Canning did not promote him due to discrimination. A177.

Gilliam was not acting within the policy and procedure established as "fairness, and legal defensibility." A23-4.  The application permits DOT to check "their references."  A33, A538 ⁋11

and 12.  The hiring decision is made based on the application, interview, and results of reference checks." *Id.*

Another contradiction is contained in the Step 2 decision of Director Transportation Solutions, McCleary who "reviewed" Plaintiff's "list of references and both individuals were people chosen" by Plaintiff. A288.  Plaintiff's references were Brian Schilling, Richard Fain and Mark Alexander. A177. McCleary asserts he spoke with the panelists who advised that they "struggled with the decision… when there are two qualified people."  A289. However, Gilliam's testimony differed and provided a justification, "I was not selecting him, I did not reach out to all his references." A552 28:12-14. The decision in her mind was not close. *Id.* She also claimed that Probert wanted the supervisor who provides the "exceeds' evaluation to be contacted. Gilliam chose Canning as he reviewed Plaintiff's 2017 performance evaluation. *See* Plaintiff's Counter Statement of Facts No. 4.  She claimed Probert named Canning. *Id.* at Nos. 3-5. Gilliam indicated that if the candidate did not provide an evaluation, the panel may not request same. Probert was told there were two sets of reference checks by Schilling but was unaware if the other individuals on Plaintiff's release had been contacted.  A53 17:18-20; A454 18:1, 5-22.

However, it should be noted that a reviewer has no input in the contents of the performance evaluation. A390 44:9-12. Canning not surprisingly provided a negative reference of Plaintiff by stating he needed to be more involved in the day-to-day operations. A0178-18. Canning, however, could not offer any explanation for the "more involvement in day to day operations" comment. PLA174 99-100:24-8.

Gilliam used the reference form and asked the same questions of Canning "to confirm his 2017 Performance review. PLA164 60:2-7. This explanation defies logic.

Further, in light of the unambiguous language of Gilliam to her co-panelist after the references, another contradiction is seen in the email exchange between the panelists in which Gilliam stated, "all things being close to equal on the application and interview sides." A200. The response by Probert indicated that Plaintiff had the better interview and most experience with Maximo and having done "what John is doing" for years. A457 30-31:2-15; A458 36:13-19; A 458 37:14-21. Further, he questioned why Canning signed off in past years on "exceeds" but had downgraded. *Id.* Additionally, Probert noted some bias and stated, "…if I was Don and I got exceeds and then my boss said I was fair/good, that is a lot of misrepresentation or potential confusion." *Id.* He even noted that "the stuff could be problematic and is hopefully fully addressed." *Id.* This comment is amplified when considering his testimony concerning the prior grievance, the reference, and the failure to document the criticism. The EEO approval form notes that Plaintiff was the preferred candidate, but for his references. A203-206. As stated *supra*, Gilliam "stands by" the contents of the form. A533 59:1-4.

At the MERB hearing, Canning explained that the difference in the 2017 and 2018 performance ratings was that there were more accomplishments listed in 2017. PLA121 99-100:24-8. He offered no explanation for the "more involvement in day-to-day operations" comment. *Id.* Canning stated that there was no place for such a comment on the review, but this contradicts the testimony of Schilling. A77-80; A397 74-75:17-19. Noting reviewer's do not comment. *Id.*

It is further notable that DOT's policy states that agency recommendations must disclose "only accurate factual information which has been documented in the employee's personnel file." A60. Both Schilling and Canning admitted the criticism contained in the references was not documented in the personnel file or writing. Neither gentlemen could provide details specifics the

11

"concern" and discussion had with Plaintiff. *See* Plaintiff's Counter Statement of Facts No. 6. The 2018 performance evaluation was completed weeks before the reference, thus, it is illogical that such a criticism, if notable enough to discuss during a reference check, would not be contained in the review. A reasonable inference is that the references were tainted. Moreover, Probert stated in such circumstances had he been advised, "there would have been a discussion on background and how that information was received, namely the reference checks…. were they above board." A48 37-38:22-9.

As for 2021, the chosen candidate answers do not appear better than Plaintiff's and his experience was significantly less with no operations experience. The rationale was that his answers demonstrated "energy and intuitive leadership." A0543 ¶11. Additionally, Canning's unsolicited email concerning notes indicated that "Plaintiff failed to provide good answers concerning working with employees, didn't demonstrate compassion towards employees, and rambled. A446 53:18-22; PLA248. Interestingly, in every evaluation received from 2014-2015, Plaintiff has been noted that he "performs thorough investigations and recommends potential discipline which is well thought out and concise." PLA 268; PLA 272; PLA276; A77; A81; A84. Further, he "does a god job handling issues that arise from employees;" *Id.* "…worked closely with the Shop to improve service;" "continues to provide excellent managerial support…." *Id.* As Plaintiff testified, it was predetermined before the interview began as Canning was on the panel once again. A487 93:13-19.

Defendant's proffered explanations for not promoting Plaintiff are rife with weakness, implausibility contradictions and incoherency. As evidenced by the testimony and documents there are genuine issues of material fact regarding Defendant's failure to promote Plaintiff in 2018, 2019 and 2021. The word "pretextual" "might well have been coined to describe the promotional process

in 2019. *Williams v. Bristol Myers Squibb, Co.,* 85 F.3d 270, 275 (7th Cir. 1996). The multiple versions of the 2018 Plaintiff's interview, the multiple explanations for using a person not on the reference list, the "dubious" comment regarding Plaintiff's performance, which is neither documented nor supported by the record, and the subjective opinion about the 2021 interview, is all evidence from which a reasonable fact finder may either disbelieve the "articulated" legitimate reasons or believe that an "invidious discriminatory reason was more likely than not a motivating determinative cause of the employer action." *Fuentes v. Perskie*, 32 F. 3d 759, 764 (3d Cir. 1994). Plaintiff has shown the promotional policy was not followed and that DOT substantially deviated from its procedures in regard to the 2019 promotion. For the reasons set forth herein, Plaintiff has discredited the proffered reasons by Defendant for not selecting Plaintiff which is more than sufficient for a factfinder to reasonably infer that the employer's rationale "… was either a *post hoc* fabrication or otherwise did not actually motivate the action taken by Defendant. *Id.* (citations omitted). The evidence reveals the weakness, implausibility, incoherency and contradictions in the "alleged" legitimate reasons from which a jury could "rationally find" theses excuses as "unworthy of credence," and to infer the action was not a non-discriminatory act. *Id* at 756 (citing *Ezold v. Wolf*, 928 F2d. 509, 527 (3d Cir. 1992)). In the present case, there is ample evidence that the explanation is pretextual and therefore, the employer's motion for summary judgment must fail. *White v. Westinghouse Elec. Co.,* 862 F. 2d 56, 62 (3d Cir. 1989). *See also Iadimarco v. Runyon*, 190 F. 3d 151, 165-66 (3d Cir. 1999). Given the totality of evidence, Plaintiff has sufficiently demonstrated a genuine issue of material fact as to whether the explanation for the failure to promote in 2018, 2019 or 2021 is pretextual. *Moore v. City of Philadelphia*, 461 F.3d 331, 346 (3d Cir. 2006). A reasonably jury could infer that in 2019, Gilliam, Canning and Schilling did everything to "derail" the promotion and placed the proverbial thumb on the scale.

13

The same evidence used to show pretext can support a finding of discriminatory animus from which a factfinder can reasonably infer that unlawful discrimination was the determinative factor in the failure to promote. *Taite v. Bridgewater State Univ., Bd. of Trustees*, 999 F. 3d 86, 94 (1st Cir. 2021) (noting the different instructions to provided candidates). A deviation "from standard procedure or policies in taking an adverse employment action" against plaintiff is evidence from which one could infer the reason for the articulated action is untrue. *Id.* at 96-97 (citing *Rodríguez-Cardi v. MMM Holdings, Inc.*, 936 F.3d 40, 50 (1st Cir. 2019)). Additionally, the mere fact that one who discriminates harbors a sincere belief that he hired the "right person" cannot masquerade as a race-neutral explanation. *Iadimarco,* 190 F.3d at 166–67. In the present case, at least two times in the past, Canning commented on Plaintiff's skin color and hair. A508 174-177:23-17; PLA130-33. Canning did not comment on the personal appearance of white engineers. A513-14 197:17-6. Accordingly, Defendant's Motion must fail.

### III.    Plaintiff has sufficient evidence to prove a causal connection between the engagement in a protected activity and the repeated and insidious acts of retaliation by Defendant.

As stated above Plaintiff can establish inconsistent reasons for the failures to promote and negative reference. *Zelinski v. Pennsylvania State Police*, 108 Fed. App'x 700, 707 (3d Cir. 2004). Although this factor merges with the plaintiff's showing of pretext, "[i]f it is determined that these reasons are merely pretextual, then they can be considered inconsistent reasons for the adverse employment action, ultimately leading to a conclusion of causation." *Id.* Thus, in the present circumstances, summary judgment is inappropriate.

Plaintiff can establish the causation element by providing evidence of inconsistent reasons for the adverse employment action. *Farrell v. Planter's Lifesavers Co.,* 206 F.3d 271, 281 (3d Cir. 2000). Following the 2018 grievance, Plaintiff was subjected to retaliation. His immediate supervisor, Brian Schilling was aware of the 2018 grievance and unhappy. A386 30:15-21 and 32-

14

33:19-2. Canning was part of the 2018 grievance and was involved in the several stages which culminated in the decision in November. A266-81. Plaintiff began the process of filing a dual charge on July 23, 2018, and filed on November 8, 2018. A312. Despite not providing Plaintiff with expectations for timeliness of constituent/legislative complaints or discussing with him a seminar, Schilling noted these items as deficiencies in the review. PLA250-61. Schilling acknowledged that these should not be included. A390 46-47:18-22; 47-8: 23-6. Notwithstanding this removal, Plaintiff's rating did not improve. A77-80. References obtained noted a directive to become more involved in the "day to day" operation. *Id.* The review completed in the preceding month before the references date is devoid of any mention of this "directive." *Id.* Canning even noted that since the request, he had seen improvement. A178-182. However, there is absolutely no information on the specifics of the issue or documentation of the criticism. *See* Plaintiff's Counter Statement of Facts No. 14. Plaintiff made repeated attempts in writing for an explanation to which neither Schilling nor Canning responded to him at all, and definitely not in writing. *Id.* The failure to follow the procedure coupled with Gilliam's contorted explanation that this was not a reference, defies logic. The entire process was tainted according to Probert. *See* Plaintiff's Counter Statement of Facts Nos. 5, 15, 16, and 19. There are genuine issues of material fact as to whether Plaintiff was denied the promotion in retaliation of his 2018 grievance and charge of discrimination.

Plaintiff can establish a causal link, the final prong, between the protected activity and the failure to promote. *Kochmar v. SunGuard Data System*, 109 F.3d 179 (3d Cir. 1997). The ultimate determination requires an analysis of the "totality of the circumstances" and the fact finder considers no individual incidents, but the "overall scenario." *Moore*, 461 F.3d at 346. In *Moore*, the Third Circuit noted that "a] play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on

individual incidents, but on the overall scenario." *Id.* (citing *Andrews v. City of Phila.,* 895 F.2d 1469, 1484 (3d Cir. 1990)). In this regard, there is a course of conduct of retaliation leading to the failure to promote, for which a reasonable jury could conclude that Schilling, Canning, Urbanek and Gilliam acted against Plaintiff in retaliation.  Further, when viewing the facts in the light most favorable to Plaintiff, a jury could believe that the series of events was caused by retaliatory animus. The performance evaluation highlights the retaliation. The review originally included comments which were neither accurate nor fair. PLA250-269. Schilling acknowledged that they should not be included. A390 46-47:18-22; 47-8:23-6. This further exemplifies the lack of communication by Schilling and different treatment of Plaintiff. Schilling complained about communication and a practice of the yard supervisors which was implemented by his predecessor from February to April 2018. A392 54-57:22-2, 12-19. He acknowledged that he would entertain questions if the problem could not be resolved. Schilling did not provide feedback in writing to Plaintiff. A388 40:1:22-2. Canning testified that the review rating in 2018 changed because there were not as many accomplishments in 2018 as in 2017, not due to the lack of involvement in the "day-to-day operations." PLA121-22 99-100:24-8. The criticisms are glaring due to the lack of documentation or follow-up. Further, Canning's explanation of the review does not consider different drafters and their writing or management style. A comparison of the 2017 and 2018 Performance Evaluations for both Plaintiff and Garcia, shows that Schilling's language was condensed in both forms the prior year. PLA240-43; 68; PLA264-5; A74-5; A77-8. Further, the comments of Plaintiff show a thorough list of accomplishments. *Id.* There is sufficient evidence from which an inference may be drawn that the adverse actions of failing to promote would not have been taken had Plaintiff did not file the grievance or DDOL charge.

Moreover, Plaintiff may rely "on a broad array of evidence" to demonstrate the causal link between the protected activity and adverse action. *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017). Plaintiff can show retaliation in the negative review which had to be corrected but continued to have a "meets expectations" ratings. The promotional process between three and five months after the formal DDOL charge is not too long to suggest "temporal" proximity. The "mere passage of time is not legally conclusive proof against retaliation." *Robinson v. Se. Pennsylvania Transp. Auth., Red Arrow Div.*, 982 F.2d 892, 894 (3d Cir. 1993); *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996). Note temporal proximity alone is not needed to establish a causal link. *Robinson*, 982 F.2d at 895. Similar to the plaintiff in *Robinson* who was subjected to a period of antagonism between his complaints of racial discrimination and subsequent discharge, Plaintiff claims that he was subjected antagonism and unfair treatment following his protected activity where Defendant searched for any reason not to promote him. *Id*. This pattern of antagonism, like in *Robinson*, is sufficient to establish a causal link. *Woodson v. Scott Paper Co*., 109 F.3d 913, 919-21 (3d Cir. 1997). Schilling was aware of the 2018 grievance, he failed to communicate expectations and then criticized Plaintiff for his subordinates following a practice that had been long established, and he failed to provided benchmarks, follow throughs or assignments of specific tasks which Plaintiff failed to meet or complete. A399 83-4:15-10; 11-24; 85:1-12; 13-24; 87:1-10; 11-18; 88:2-7. There is no evidence provided that Plaintiff did not perform his responsibilities in anything but a competent manner. Canning participated in all three promotional processes and was aware of Plaintiff's complaints, especially in light of 2019 reference issue. Yet, he made no effort to outline expectations, set goals or have a conversation about the comment made in the reference. *See* Plaintiff's Counter Statement of Facts No. 6. The hubris of DOT is evident when an employee says, "I was not given this

17

"criticism" or "this discussion never happened" and there was no inquiry, yet it stands by these absurd actions. This is more so given the participation of Gilliam, Canning and Urbanek in the prior grievance just months before the 2019 promotion and the failure to disclose this to Probert. All these actions can be viewed as retaliatory by a reasonable jury. There is no question that Plaintiff was qualified for the maintenance engineer position and that he had the requisite experience and knowledge. He had worked as the assistant maintenance engineer for years as well as over ten years as the contracts engineer. He had both operational and contracts experience. A93-96, 145-155, 220-230. There is a dispute among the panel members in 2018 and 2019, that Plaintiff's answers to the questions were good. Canning did not ask to recuse himself in 2021 and sat on the panel. The panel agreed on a candidate, yet Canning prepared an unsolicited email concerning his impressions of the candidates because he figured Plaintiff "may appeal." A446-47 53-54:3-9; 55:2-11; PLA248. Canning knew all the maintenance engineers for the canal district all the way back to the early 2000s, and of whom all were white like himself. A447 55:9-17. The retaliation was the reason for the denial of the 2019 promotion.

Plaintiff can show causation by showing "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link" or (3) "from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir.2007) (quoting *Farrell*, 206 F.3d at 281; *see also Vermeer v. Univ. of Delaware*, 2024 WL 81291, at *14 (D. Del. Jan. 8, 2024). In cases where there is not an unduly suggestive timing, the Third Circuit has found an inference of causation when the adverse action occurs at the employer's first opportunity to retaliate. *Lipschultz v. Holy Family Univ.*, 2017 WL 1331731, at *9 (E.D. Pa. Feb. 17, 2017) (concluding that a fourteen-month gap between a protected

activity and plaintiff's termination did not preclude an inference of causation where the defendant waited until the first opportunity it had to retaliate against the plaintiff, and the defendant gave inconsistent reasons for plaintiff's termination). Here, the promotion presented itself shortly after the grievance ended and the DDOL/EEOC charge was filed, arguably, the first opportunity which presented itself. A jury could find that Defendant's actions with the negative review, the promotional process and subsequent treatment for promotion after his protected activity shows a causal connection between the complaints and Plaintiff's denial of promotion(s). Thus, Defendant's Motion should be denied.

## IV.    Plaintiff's may offer alternative remedies under the DDEA and Title VII.

The DDEA states that a plaintiff must elect a Delaware or federal forum to prosecute the employment discrimination cause of action to avoid unnecessary costs, delays, and duplicative litigation. 19 *Del. C.* § 714(c). There have been contrasting rulings on whether this provision prevents a plaintiff from simultaneously bringing claims under both Title VII and the DDEA. However, in *Wooten v. City of Wilmington*, this Court permitted both claims to proceed. 2021 WL 411707, at \*7 (D. Del. Feb. 5, 2021). Title VII and DDEA claims are evaluated under the same framework and have virtually identical language. *Id.* (citing *Brangman v. AstraZeneca, LP*, 952 F.2d 710, 724 n.4 (E.D. Pa. 2013) and *Spady v. Wesley College*, 2010 WL 3907357, at \*3 n.4 (D. Del. Sept. 29, 2010)). Therefore, Plaintiff can proceed under both statutes.

## <u>CONCLUSION</u>

For the foregoing reasons, it is respectfully requested that Defendant's Motion for Summary Judgment be denied.

*{Signature Line on Following Page}*

19

**ALLEN & ASSOCIATES**

*/s/ Michele D. Allen*
Michele D. Allen (#4359)
Delia A. Clark (#3337)
4250 Lancaster Pike, Suite 230
Wilmington, DE 19805
(302) 234-8600
(302) 397-3930 (fax)
michele@allenlaborlaw.com
delia@allenlaborlaw.com

Dated: April 26, 2024                    *Attorneys for Plaintiff*

20