# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD A. FINNEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civ. No. 22-1059 SRF |
| DELAWARE DEPARTMENT OF | ) |
| TRANSPORTATION, | ) |
| | ) |
| Defendant. | ) |

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

Victoria R. Sweeney (#6072)
Deputy Attorney General
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400
Victoria.Sweeney@delaware.gov
*Attorney for Defendant*

Date: May 3, 2024

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT ..............................................................................................................................1

I.      STATUTORY BARS TO PLAINTIFF'S TITLE VII CLAIMS........................................1

II.     PLAINTIFF'S TITLE VII CLAIMS FAIL (COUNTS I, III) ............................................2

         A.     Discrimination...........................................................................................................2

         B.     Retaliation ................................................................................................................8

IV.    THE STATE LAW CLAIMS FAIL (COUNTS II, IV) .......................................................9

CONCLUSION...........................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................................................................2

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ....................................................9

*Conklin v. Warrington Twp.*, 2009 WL 1227950 (M.D. Pa. Apr. 30, 2009)...................................9

*Daughtry v. Family Dollar Stores, Inc.*, 634 F. Supp. 2d 475 (D. Del. 2009) ................................9

*Davis v. City of Newark*, 2008 WL 2973912 (3d Cir. 2008)...........................................................3

*Esaka v. Nanticoke Health Servs., Inc.*, 752 F. Supp. 2d 476 (D. Del. 2010).................................9

*Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509 (3d Cir. 1992)..............................3, 4

*Flores v. Danberg*, 84 F. Supp. 3d 340 (D. Del. 2015) ..................................................................8

*Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994)...................................................................... passim

*Jensen v. Potter*, 435 F.3d 444 (3d Cir. 2006) ................................................................................9

*Koschoff v. Henderson,* 109 F. Supp. 2d. 332 (E.D. Pa 2000)
   *aff'd*, 35 F. App'x 357 (3d Cir. 2002) ..............................................................................9

*Martin v. Pachulski, Stang, Ziehl, Young & Jones, P.C.*, 551 F.Supp.2d 322 (D. Del. 2008)..........2

*Martinez v. Dep't of Homeland Sec./Div. of the State Police*,
   2019 WL 1220305 (D. Del. Mar. 15, 2019)......................................................................9

*McKinnon v. Gonzalez*, 642 F. Supp. 2d 410 (D.N.J. 2009) ............................................................9

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)..........................................................1

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998)......................................................9

*Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) ...................................................2

*Roane v. Delaware Transit Corp.*, 2015 WL 1228627 (D. Del. Mar. 17, 2015)..............................7

*Robertson v. Allied Signal, Inc.*, 914 F.2d 360 (3d Cir. 1990) ........................................................2

*Robinson v. Se. Pennsylvania Transp. Auth., Red Arrow Div.*, 982 F.2d 892 (3d Cir. 1993)...........8

*Simko v. United States Steel Corp*, 992 F.3d 198 (3d Cir. 2021) ....................................................1

*Spencer v. Hudson Trader Inv. Servs.*, 2006 WL 1644859 (D.N.J. June 6, 2006) ........................... 3

**Statutes and Rules**

42 U.S.C. § 2000e *et seq. (Title VII)* ....................................................................................... *passim*

# ARGUMENT[1]

## I. STATUTORY BARS TO PLAINTIFF'S TITLE VII CLAIMS

Plaintiff's argument regarding the timeliness of her EEOC complaint is inapposite. Under 42 U.S.C. § 2000e-5, "a Title VII plaintiff [is required to] file a charge with the Equal Employment Opportunity Commission (EEOC) . . . 300 days after the alleged unlawful employment practice occurred." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). As argued in the Opening Brief, "when determining whether a claim fairly or reasonably falls within the investigation arising from a charge, courts consider (1) whether the claim arises from the same set of facts that support the original charge and (2) whether the claim advances the same theory of discrimination as the original charge." *Simko v. United States Steel Corp.*, 992 F.3d 198, 209 (3d Cir. 2021). "The original charge is the touchstone of our exhaustion analysis. *Id*. at 210. (quoting *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996). Courts "look for factual similarities or connections between the events described in the claims, the actors involved, and the nature of the employer conduct at issue" *Id*.

However, factual overlap alone, "does not guarantee that the new allegations are encompassed by the original charge if they do not fall within the 'gravamen' of the initial charge." *Id*. (citing *Antol*, 82 F.3d at 1296). Here, Plaintiff attempted to amend his 2018 charge by adding a new discrete act that involved different alleged wrongdoers that occurred a year after the initial act. Even if there was factual overlap between the 2018 and 2019 promotional processes, the promotional processes involved different candidates, different interview panelists such that the

---

[1] Plaintiff filed no opposition to Defendant's argument that Plaintiff failed to establish a *prima facie* case for disparate impact as alleged in Count V of his Amended Complaint. AB at 1 n.1. Accordingly, Defendant respectfully requests this Court to dismiss Count V of the Amended Complaint.

2019 promotional process would not fall within the investigation of the initial claim. Plaintiff's failure to exhaust his administrative remedies available under Title VII is fatal to his claims.

## II.     PLAINTIFF'S TITLE VII CLAIMS FAIL

It was incumbent upon Plaintiff to "present affirmative evidence to defeat [DelDOT's] properly supported motion for [judgment as a matter of law]." *See Martin v. Pachulski, Stang, Ziehl, Young & Jones, P.C.*, 551 F.Supp.2d 322, 328 (D. Del. 2008) *(citing Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986)). Plaintiff's bald assertions, mischaracterization of the record, and conclusory allegations unsupported by evidence in the record are insufficient to defeat DelDOT's well-supported motion. *See Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n. 12 (3d Cir. 1990); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks and citation omitted).

Under *Fuentes v. Perskie*, a plaintiff may "*either* (i) discredit[] the proffered reasons, either circumstantially or directly, or (ii) adduc[e] evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." 32 F.3d 759, 764 (3d Cir. 1994). The purported "evidence" of pretext on which Plaintiff relies fails to demonstrate pretext within the meaning of *Fuentes*.

### A. Discrimination

As set forth in DelDOT's Opening Brief, the record is devoid of any evidence discrediting DelDOT's reason for not promoting Plaintiff during any of the promotional processes in question. In his opposition, Plaintiff fails to present any evidence sufficient to overcome his burden. First, Plaintiff argues that the "culture" at DelDOT and alleged "preference and bias for white candidates is apparent" citing to documents detailing the history of the Maintenance Engineer vacancies, as

2

well as data for incumbents classified as Maintenance Engineer Program Manager II.  AB at 7 (*citing* PLA221; PLA234-39; PLA245-6).  It is no secret the applicant pool for the Maintenance Engineer position has been predominately white.  Deft. Concise Statement of Facts (D.I. 54) ¶ 6 (citing A0538–39 (Winkler Decl. ¶¶ 14–18)).[2]  But "data such as 'numerical comparisons . . . not accompanied by any analysis of either the qualified applicant pool or the flow of qualified candidates over a relevant time period" are inherently weak evidence of racial animus." *Spencer v. Hudson Trader Inv. Servs.*, 2006 WL 1644859, at *4 (D.N.J. June 6, 2006) (quoting *Ezold v. Wolf, Block, Schorr & Solis–Cohen*, 983 F.2d 509, 542 (3d Cir.1992).  Since no conclusion can be drawn from the data, it does not support Plaintiff's allegations of discrimination.[3]  Importantly, there is nothing in the record to support any argument that DelDOT harbors a racist culture led by Canning, and Plaintiff points to no material facts to suggest otherwise. Indeed, Plaintiff cites to only two instances in which Canning commented on Plaintiff's skin color and hair.  AB at 14.  But as argued in the Opening Brief, these stray remarks were made temporally remote from the date of the 2018, 2019, or 2021 decisions and cannot be reasonably construed as invoked any racial feeling.  *Davis v. City of Newark*, 2008 WL 2973912, at *2 (3d Cir. 2008); *Ezold*, 983 F.2d at 545 (3d Cir. 1992). Accordingly, Plaintiff has failed to meet his burden.

Plaintiff similarly fails to demonstrate how DelDOT's reliance on the 2018 and 2021 interviews to select the successful applicants meets the *Fuentes* standard.  *See* AB 7–8, 12.

---

[2] In Plaintiff's Response to DelDOT's Concise Statement of Facts, Plaintiff attempts to deny this by highlighting specific facts about the Maintenance Engineer position in the Canal and Northern Districts which does nothing to contradict DelDOT's statement about the applicant pool.  See Pltf. Concise Statement of Facts (D.I. 57) ¶ 6.

[3] For this reason, Plaintiff's reliance on this data to show Canning "was routinely known for favoring" white candidates also fails. AB at 8.  Plaintiff's mistaken belief that Canning's role as the "Hiring Manager" meant that he had the sole responsibility for selecting the successful applicant. *Id*. Not so. The record clearly establishes the panelists select the successful candidate unanimously, and there is nothing in the record that suggests otherwise.

Plaintiff argues that the 2018 interview panelists testified that Plaintiff's responses to certain questions were "good," which contradicts and weakens DelDOT's legitimate, nondiscriminatory rationale for not promoting Plaintiff in 2018. AB at 7–9, 13. This argument is founded on a mischaracterization of the record as Plaintiff relies upon testimony concerning only *a handful* of his responses in the 2018 interview and ignores the uncontroverted testimony that *his answers to the seventeen questions overall* were inferior to both the selected candidate and the runner-up.[4] PLA109:9–PLA110:1-4 (Gilliam); PLA048:21–PLA049:7 (Canning). Notwithstanding, even if some of the panelists disagreed about which questions Plaintiff answered better than others, a disagreement among decision-makers does not evidence discrimination—especially if overall, the panelists agreed he underperformed. *Fuentes v. Perskie*, 32 F.3d 759, 767 (3d Cir. 1994) (citing *Ezold*, 983 F.2d 509, 533 (3d Cir.1992)).

Plaintiff's argument oversimplifies and misapprehends the "difficult burden" Plaintiff has in proving "[c]ontradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Fuentes*, 32 F.3d at 765. All 2018 interview panelists agreed that, when given the chance to demonstrate how he differed from the other candidates in a noticeable way, Plaintiff failed to execute and instead, provided no new information for the panelists to consider. PLA058:1–9 (Canning); PLA074:14–18 (Urbanek); PLA105:4–PLA108:3 (Gilliam). Specifically, Urbanek testified that Plaintiff did not describe any of his own initiatives or programs in response to the question. PLA074:18-18. Gilliam further

---

[4] The testimony on which Plaintiff relies to support his argument was provided during a merit grievance hearing before the Board, in which Plaintiff, acting *pro se*, asked the panelists about specific questions. Notably, questions from the Board and from DelDOT's counsel elicited testimony demonstrating that the handful of answers on which Plaintiff focused were not indicative of his overall performance during the interview, as evidenced by the Board's decision finding that Plaintiff failed to present *any* evidence of discrimination. *See* A0277–81.

4

testified that Plaintiff's answers overall did not reflect the level of expertise she expected him to have given his experience and the amount of time Plaintiff spent in his position at that time. PLA110:1–4; PLA113:2–10.  Canning also expected Plaintiff to provide answers reflecting his own ideas in managing problems given his experience with DelDOT.  *See* PLA048:21–PLA049:7. Ultimately, the record is devoid of any facts that contradict DelDOT's rationale funder the *Fuentes* standard and therefore, Plaintiff's argument fails.

Similarly, with respect to the 2021 promotional process, Plaintiff again wholly ignores the uncontroverted evidence in the record.  AB at 12.  Plaintiff claims that Canning's "unsolicited email" detailing his assessment of Plaintiff during the interview, coupled with Plaintiff's evaluations form 2014-2015 show pretext.  *Id*.  But again, Plaintiff ignores Bown, Hastings, and Canning's interview notes (A0236–59), the EEO Approval form (A0260–62), and Brown's Declaration (A0541–45).[5]  The record indicates that Hauske and Draper (the successful applicant and runner-up, respectively) interviewed well.  According to Brown, who was serving as the Hiring Manager, Hauske clearly demonstrated that his experience, energy and intuitive leadership skills would make for a successful Maintenance Engineer in Canal District. A0543 at ¶ 11.  Likewise, Draper demonstrated a clear understanding of the job responsibilities and provided ways in which he would meet certain challenges if selected for the position. *Id*. at ¶ 12.  But once again, Finney's interview performance fell short.  *Id*. at ¶ 13. Although Plaintiff had the requisite knowledge and experience as an engineer, Brown thought he did not provide answers sufficient to demonstrate that he worked well with other employees or would be able to effectively manage and lead other employees. *Id*.  Notably, Plaintiff's responses lacked direction, depth, and empathy. *Id*.

---

[5] Interestingly, Plaintiff chose not to depose Brown or Hastings.

Plaintiff's continued belief that he was always the better candidate for the positions in question when compared to the successful applicants also fails. *See* AB at 12. Plaintiff admits the successful applicants met the minimum qualifications for the position, but even if Plaintiff was *better* qualified then the selected candidates, at most, this fact demonstrates that the interviewing panel was mistaken in its analysis of the applicants. Plaintiff "cannot simply show that [DelDOT's] decision was wrong or mistaken, since the factual dispute at issue is whether *discriminatory animus* motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *See Fuentes*, 32 F.3d at 765 (emphasis added). Plaintiff's argument fails.

Plaintiff's attempt to attack the 2019 promotional process likewise does not constitute evidence to discredit DelDOT's nondiscriminatory rationale to not promote Plaintiff. AB at 9–12. It is undisputed that the decision to not select Plaintiff for the 2019 promotion was a close call and ultimately, the decision came down to the reference check.[6] Plaintiff's continued argument that Gilliam contacting Canning violated DelDOT policy and supports his claim of discrimination is a red herring.[7] AB at 9. As soon as Plaintiff brought his 2017 Performance Evaluation to his 2018 interview, the Hiring Manager and interview panelists were permitted to question and investigate those documents, which included contacting the only supervisor who signed off on the Performance Evaluation and was still employed by the State, which was Canning. PLA159 at 38:20-24; PLA159 at 40:16–PLA160 at 41:6. To be fair, Gilliam contacted Canning and Schilling to provide insight on *both* Plaintiff and Garcia, as both applicants were within Canning and Schilling's supervisory chain of command. DelDOT policy also permits the Hiring Manager to

---

[6] Gilliam and

[7] Moreover, DelDOT policy requires the Hiring Manager and interview panelists to perform reference checks for the *successful candidate*. PLA164 at 58:14–22; 59:9–17; A0035. Plaintiff was not the successful candidate, and therefore, his preferred list of references need not be contacted.

6

contact an applicant's supervisor during the interview process. The fact that the panelists *could* consider all of Plaintiff's references but did not may show that DelDOT's decision was wrong or mistaken—which DelDOT denies—but it does not demonstrate a discriminatory animus motivated DelDOT. *See Fuentes*, 32 F.3d at 765. Plaintiff's argument therefore fails.

Gilliam's editing of the reference forms to add the specific criticism to the ratings is not evidence of discriminatory intent, but rather proper documentation of support for the hiring panel's decision to reject a candidate. *See Fuentes*, 32 F.3d at 766 ("Given the frequency of employment discrimination suits, an employer which documents its reasons for taking adverse employment actions can often be more suitably described as sensible than as devious.")

Plaintiff further complains that Gilliam's documentation of not selecting Finney references his lack of follow-up regarding issues with "Pre-Wet systems" in other districts (A0204), but the criticism is not reflected in the panel's interview notes. However, the interview notes do reflect Finney's discussion of the lack of pre-wet system in the Canal District in response to a question regarding what he did to identify a problem and gain buy-in from staff. A0186; A0191; A0196. Consistent with Gilliam's documentation, the interview notes show Finney identified that staff in his district resisted implementation, but there is nothing to indicate Finney explained what he did to follow up and try to implement changes and obtain staff buy-in.

The record does not disclose any evidence to rebut DelDOT's proffered non-discriminatory reasons for Plaintiff's termination, or to suggest that DelDOT's reasons for termination were a pretext for discrimination. Plaintiff has done nothing, beyond his conclusory allegations of unfair treatment, to rebut DelDOT's legitimate, non-discriminatory reason for not promoting Plaintiff, or to suggest DelDOT's reasons are pretext for racial discrimination. *See Roane v. Delaware Transit Corp.*, 2015 WL 1228627, at *3-4 (D. Del. Mar. 17, 2015) (granting summary judgment where

"nothing before the Court. . . contradict[ed] the proffered reason" for the adverse employment action).

### B. Retaliation

Plaintiff also fails to satisfy his obligation to provide specific material from the record establishing a genuine factual dispute as to his retaliation claims regarding the 2019 and 2021 promotional process. *See* AB at 14–19. While it's true that the 2019 and 2021 promotional processes occurred while Plaintiff's 2018 grievances and EEOC/DDOL charge were pending, as argued in the Opening Brief, "temporal proximity alone is insufficient" to establish causation. *Flores v. Danberg*, 84 F. Supp. 3d 340, 350 (D. Del. 2015).

In his Answering Brief, Plaintiff focuses on the 2019 promotional process, specifically as it relates to Schilling and Canning's criticisms of Plaintiff, arguing that neither supervisor tried to outline expectations, set goals, or effectively communicate with Plaintiff. AB at 16, 17. Plaintiff's attempt to compare himself to the plaintiff in *Robinson v. Southeastern Pennsylvania Transportation Authority, Red Arrow Division*, is unavailing. 982 F.2d 892 (3d Cir. 1993). In *Robinson*, when the plaintiff complained to his supervisors about racial discrimination occurring in the workplace, his supervisors became "verbally abusive." *Id*. at 895. Thereafter, the employer "repeatedly disciplin[ed] the plaintiff for minor matters, miscalculate[ed] his points for absences from work, and generally [tried] to provoke [him] to insubordination. *Id*. The complained of conduct was egregious and involved a "pattern of antagonism." *Id*. Those are not the facts we have here. There is nothing in the record that Plaintiff was verbally abused, repeatedly disciplined, deprived of any leave, or generally provoked to act insubordinately.

Instead, Plaintiff takes issue with Schilling and Canning's management style, and their comments when contacted during the 2019 promotional process. Notably absent from the record

though, is any evidence demonstrating that any of the alleged wrongful conduct was motivated by Plaintiff's race.[8] "Title VII is not 'a general civility code for the American workplace.'" *Jensen v. Potter*, 435 F.3d 444, 449 n. 3 (3d Cir. 2006), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (*quoting Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–81 (1998)). Plaintiff's general complaints about Schilling and Canning's management fail to establish a "but for" causal link between any supposed adverse action. *Conklin v. Warrington Twp.*, 2009 WL 1227950, at *3 (M.D. Pa. Apr. 30, 2009).

### III. PLAINTIFF'S STATE LAW CLAIMS FAIL (COUNTS II, IV)

Plaintiff acknowledges that courts have held that the DDEA bars a plaintiff from simultaneously seeking remedies for employment discrimination under federal and state law at the same time (AB at 19) and argues that there have been contrasting rulings, but ignores the federal decisions that support DelDOT's position. *See Martinez v. Dep't of Homeland Sec./Div. of the State Police*, 2019 WL 1220305, at *1 n.1 (D. Del. Mar. 15, 2019); *Esaka v. Nanticoke Health Servs., Inc.*, 752 F. Supp. 2d 476, 481 (D. Del. 2010); *Daughtry v. Family Dollar Stores, Inc.*, 634 F. Supp. 2d 475, 483 n. 13 (D. Del. 2009).

Additionally, Plaintiffs failed to respond to DelDOT's alternative argument that this Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. See OB at 19

---

[8] Plaintiff's argument on this point reads as if it's a claim for hostile work environment, which he has not plead (nor could he prove). But even on a claim for hostile work environment, Plaintiff's claims would still fail as "it is well-settled that difficult or stressful working conditions are not tantamount to a hostile work environment caused by acts of discrimination." *McKinnon v. Gonzalez*, 642 F. Supp. 2d 410, 422 (D.N.J. 2009) (citations omitted); *see also Koschoff v. Henderson*, 109 F. Supp. 2d. 332, 345-46 (E.D. Pa 2000) *aff'd*, 35 F. App'x 357 (3d Cir. 2002) (holding that allegedly harassing conduct that is motivated by a bad working relationship, by a belief that the plaintiff has acted improperly, or by personal animosity is not protected by Title VII).

9

n. 6. Given that Plaintiff's federal claims fail, the Court should decline to exercise jurisdiction over Plaintiff's state law claims and should dismiss those claims.

## CONCLUSION

WHEREFORE, Defendants respectfully request that this Honorable Court grant DelDOT's Motion for Summary Judgment.

                STATE OF DELAWARE
                DEPARTMENT OF JUSTICE

                */s/ Victoria R. Sweeney*
                Victoria R. Sweeney (#6586)
                Deputy Attorney General
                Carvel State Office Building
                820 North French Street, 6th Floor
                Wilmington, Delaware 19801
                (302) 577-8400
                Victoria.Sweeney@delaware.gov
                *Attorney for Defendant*

Date: April 12, 2024