**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

DONALD A. FINNEY,                         )
                                          )
              Plaintiff,                   )
                                          )
       v.                                 )          Civil Action No. 22-1059-SRF
                                          )
DELAWARE DEPARTMENT OF                    )
TRANSPORTATION,                           )
                                          )
              Defendant.                   )

---

Michele D. Allen, Delia A. Clark, ALLEN & ASSOCIATES, Wilmington, DE.

       Attorneys for Plaintiff.

Victoria R. Sweeney, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE.

       Attorney for Defendant.

---

**MEMORANDUM OPINION**

July 2, 2024
Wilmington, Delaware

**FALLON, U.S. MAGISTRATE JUDGE:**

Plaintiff Donald A. Finney ("Plaintiff") filed this employment discrimination action on August 11, 2022, asserting causes of action for racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Delaware Discrimination in Employment Act ("DDEA"), 19 *Del. C.* § 711(a)(1). (D.I. 1; D.I. 23) On December 2, 2022, the parties consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this case including trial, the entry of final judgment, and all post-trial proceedings. (D.I. 14) The court has jurisdiction pursuant to 28 U.S.C. § 1331.

Presently before the court is a motion for summary judgment under Federal Rule of Civil Procedure 56, which was filed by defendant Delaware Department of Transportation ("Defendant"). (D.I. 52)[1] For the following reasons, Defendant's motion for summary judgment is GRANTED-IN-PART.

## I.    BACKGROUND

Plaintiff, who identifies as an Asian American male, was employed by Defendant's Division of Maintenance and Operations as a Contracts Engineer and later as an Assistant Maintenance Engineer from 1999 until his retirement in 2023. (D.I. 23 at ¶¶ 27-28; D.I. 54 at ¶¶ 7-8; D.I. 57 at ¶¶ 7-8) In this litigation, Plaintiff alleges that Defendant failed to promote Plaintiff to the position of Maintenance Engineer on three occasions due to racial discrimination. (D.I. 23 at ¶¶ 33-91) Plaintiff also avers that Defendant retaliated against Plaintiff for engaging in protected activity by pursuing grievances and filing charges of discrimination with the Delaware Department of Labor ("DDOL") and Equal Employment Opportunity Commission ("EEOC"). (*Id.* at ¶¶ 63-69, 75-76, 88-91, 132-45)

---

[1] The briefing and filings associated with the pending motion for summary judgment are found at D.I. 53, D.I. 54, D.I. 55, D.I. 56, D.I. 57, D.I. 58, D.I. 59, D.I. 60, and D.I. 61.

The Division of Maintenance and Operations (the "Division") is responsible for keeping Delaware's road transportation network in a state of good repair. (D.I. 55 at A0541 at ¶ 2) The Division is divided into four geographic maintenance districts, each of which is headed by a District Engineer: North District, Canal District, Central District, and South District. (*Id.* at ¶ 4) The hierarchy of Merit Classified engineering positions for the Canal District is set forth in the flowchart below.



Plaintiff unsuccessfully sought a promotion to the position of Maintenance Engineer four times beginning in 2014. (D.I. 55 at A0263-65) Each time, Plaintiff underwent Defendant's standard hiring process, which is governed by the State of Delaware Department of Human Resources User's Guide to Merit System Hiring (the "DHR User's Guide"). (D.I. 55 at A0016-64) The process entails, among other things, the submission of a written application, an interview conducted by a diverse three-member hiring panel asking each applicant a uniform set of questions, and reference checks. (*Id.*)

In 2014, Plaintiff was denied the position of Maintenance Engineer for the North District and subsequently filed a grievance under the State of Delaware Merit Rules promulgated by the Merit Employee Relations Board ("MERB"), alleging racial discrimination and abuse of discretion. (D.I. 55 at A0263-65, A0542 at ¶ 5) However, Plaintiff withdrew his discrimination allegation due to a lack of evidence at Step 1 of the grievance process and the grievance was denied. (*Id.* at A0263-65) The 2014 failure to promote is not among the claims brought by Plaintiff in this action.

Plaintiff applied for the Maintenance Engineer position in the Canal District in January of 2018. (D.I. 55 at A0093-96, A0109-19) The hiring panel interviewing Plaintiff and seven other candidates was comprised of Kevin Canning (a white male), LaTonya Gilliam (a black female), and Brian Urbanek (a white male). (*Id.* at A0127) Following the interview process, Plaintiff was not among the top three candidates. (*Id.* at A0127-28) Brian Schilling, a white male, was selected for the position after receiving approval from the Equal Employment Opportunity / Affirmative Action Officer ("EEO/AA Officer"). (*Id.* at A0127, A0540)

On February 7, 2018, Plaintiff filed a grievance under the Merit Rules, alleging that the panel abused its discretion in hiring Schilling over Plaintiff. (*Id.* at A0266-68) His grievance

was ultimately denied by the MERB.  (*Id.* at A0277-81)  Plaintiff filed a charge of discrimination with the DDOL and the EEOC on November 8, 2018 (the "2018 Charge").  (*Id.* at A0319)  The 2018 Charge alleged that Plaintiff was not promoted due to race, color, and age discrimination. (*Id.*)  Receipt of the 2018 Charge was confirmed via email on March 15, 2019.  (*Id.* at A0320)

Plaintiff applied for the Maintenance Engineer position in the North District in January of 2019.  (*Id.* at A0129-32, A0145-55)  The hiring panel of Gilliam, Urbanek, and Alastair Probert (white male) interviewed Plaintiff and six other candidates.  (*Id.* at A0203-06)  After the interview process, Plaintiff and John Garcia were the top two candidates.  (*Id.* at A0203-04) However, the panel selected Garcia over Plaintiff following reference checks of both candidates. (*Id.*)

> The DHR User's Guide provides the following guidance on reference checks:
>
> The candidate is responsible for providing references who can be reached and respond to questions.  By submitting the application, candidates agree to the release of information from previous employers.  If the candidate indicates they do not want his/her present employer contacted, be careful not to make the contact without the candidate's consent[.]

(*Id.* at A0036)  Plaintiff listed Schilling, Richard Fain, and Mark Alexander as references on his application.  (*Id.* at A0177)  The hiring panel contacted Schilling about Plaintiff's performance, but there is no evidence of record that Fain and Alexander were contacted.  Instead, the panel reached out to Canning, Plaintiff's District Engineer, who was not listed by Plaintiff as a reference.  (*Id.* at A0178-81)  Ultimately, the hiring panel concluded that Plaintiff "interviewed well and would have been the selected candidate if not for the results of the reference check." (*Id.* at A0204)

In response to the reference checks, Schilling and Canning indicated that Plaintiff had been asked to be more involved in the "day to day operations" side of the house.  (D.I. 58 at ¶ 13;

D.I. 61 at ¶ 13)  This critique was not included in Plaintiff's 2018 Performance Evaluation,

which was completed and signed five weeks before the reference checks.  (*Id.* at ¶ 14)  Plaintiff

denies receiving this criticism before the reference check process, and Canning admitted that he

had not discussed it with Plaintiff.  (*Id.*)  Probert questioned whether Canning's reference was

consistent with his prior evaluations of Plaintiff's performance, but Gilliam responded that she

did not think it was necessary to question the issue.  (D.I. 58 at ¶ 19; D.I. 55 at A0200-01)

Plaintiff filed a grievance under the Merit Rules on April 9, 2019, alleging that the panel

abused its discretion in hiring Garcia over Plaintiff and racially discriminated against Plaintiff in

the hiring process.  (D.I. 55 at A0282-84)  Plaintiff also indicated that the panel's choice may

have been impacted by retaliatory motives because two of the three panel members were also

panel members for the Canal District Maintenance Engineer position in 2018.  (*Id.* at A0283)

The MERB denied Plaintiff's 2019 grievance in an order dated July 22, 2020.  (*Id.* at A0290-97)

In June of 2019, while Plaintiff's 2019 grievance was still being reviewed, Plaintiff

contacted the DDOL with a request to update his 2018 Charge with an addendum describing the

2019 failure to promote based on "a dubious negative reference and response to an extended

question."  (*Id.* at A0322)  A DDOL employee confirmed receipt of Plaintiff's addendum and

made note of it in Plaintiff's file.  (*Id.* at A0321)

Plaintiff applied for a vacant Maintenance Engineer position for the Canal District in July

of 2021.  (*Id.* at A0207-09, A0220-30)  The hiring panel of Canning, Anne Brown (white

female), and Shanté Hastings (black female) interviewed Plaintiff and four other candidates.  (*Id.*

at A0542 at ¶ 8)  (*Id.* at A0260-62)  After the interview process, Michael Hauske and Nathan

Draper were the top two candidates, and Hauske was selected for the position after receiving

6

approval from the EEO/AA Officer. (*Id.* at A0261) Both Hauske and Draper are white males. (D.I. 54 at ¶ 28)

Plaintiff filed a grievance under the Merit Rules on July 23, 2021, alleging that the panel abused its discretion in hiring Hauske over Plaintiff and racially discriminated against Plaintiff in the hiring process. (D.I. 55 at A0306-09) Plaintiff also indicated that the panel's choice may have been retaliatory based on Plaintiff's history of raising grievances. (*Id.* at A0308) Defendant denied Plaintiff's 2021 grievance in a letter dated August 23, 2021. (*Id.* at A0310-11)

On September 10, 2021, the DDOL issued a right to sue notice on Plaintiff's 2018 Charge. (*Id.* at A0325-32) The EEOC issued a corresponding right to sue notice on the 2018 Charge on November 19, 2021. (*Id.* at A0333-34)

On April 26, 2022, Plaintiff filed a charge of discrimination with the DDOL and EEOC based on race, color, age, retaliation, and a continuing violation (the "2022 Charge"). (*Id.* at A0335) The 2022 Charge cites Plaintiff's failure to be promoted in 2018, 2019, and 2021. (*Id.* at A0335-36) The EEOC acknowledged receipt of the dual-charge filing on November 7, 2022. (*Id.* at A0347) On December 12, 2022, Plaintiff received a right to sue notice from the DDOL pertaining to the 2022 Charge. (*Id.* at A0348-49) The EEOC referred Plaintiff's request for a right to sue notice to the U.S. Department of Justice ("DOJ"), and the DOJ notified Plaintiff of his right to sue on January 13, 2023. (*Id.* at A0351-52)

Plaintiff's amended complaint asserts five causes of action: (1) discrimination based on race or color under Title VII (Count I); (2) discrimination based on race or color under the DDEA (Count II); (3) retaliation based on race or color under Title VII (Count III); (4) retaliation based on race or color under the DDEA (Count IV); and (5) disparate impact in violation of Title VII and the DDEA (Count V). (D.I. 23) Defendant's motion for summary

judgment seeks judgment in Defendant's favor and against Plaintiff on all five causes of action. (D.I. 52)

## II.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 322. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support the assertion by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d

Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of its case, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

## III.   DISCUSSION

### A.   Exhaustion of Administrative Remedies (Counts I, III, & V)

A Title VII claim must be preceded by the filing of a charge of discrimination with the EEOC. *Simko v. U.S. Steel Corp.*, 992 F.3d 198, 207 (3d Cir. 2021); *Daoud v. City of Wilmington*, 894 F. Supp. 2d 544, 552 (D. Del. 2012). Defendant alleges that Plaintiff failed to file a separate charge of discrimination regarding the 2019 failure to promote and seeks partial dismissal of Counts I, III, and V on this basis. (D.I. 53 at 8-9) According to Defendant, Plaintiff's attempt to amend the 2018 Charge to include the 2019 failure to promote claim is deficient because each alleged failure to promote amounts to a discrete act of discrimination that must be separately alleged in an EEOC charge of discrimination. (*Id.* at 9; D.I. 60 at 1)

It is well-established that a failure to promote is a "discrete act" that is individually actionable and may not be aggregated with other discriminatory acts. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002) (defining "[d]iscrete acts" to include "termination, failure to promote, denial of transfer, or refusal to hire. . . ."); *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006). Therefore, Plaintiff's attempt to amend his 2018 Charge by adding allegations regarding the 2019 failure to promote does not technically satisfy the administrative exhaustion requirements. But Plaintiff argues that he should not be penalized for his failure to file a separate 2019 charge of discrimination when a representative of the DDOL confirmed receipt of his proposed addendum and indicated it had been added to his file. (D.I. 56 at 2-4)

9

Plaintiff's position is supported by analogous Third Circuit case authority. In *James v. Sutliff Saturn, Inc.*, the Third Circuit vacated a grant of summary judgment on the plaintiff's disability discrimination claim even though the plaintiff had not technically satisfied the administrative verification requirement for bringing the charge. 468 F. App'x 118, 122-23 (3d Cir. 2012). As in this case, the plaintiff had filed an original race discrimination charge that satisfied the administrative requirements, and he subsequently requested an amendment to that charge and asked how to proceed. *Id.* at 122. Instead of directing the plaintiff to the applicable forms and procedures, the agency contact instructed him to answer certain questions "in any format." *Id.* The plaintiff complied with the instructions and believed that his amendment was being processed. *Id.* at 122-23. The Third Circuit concluded that the plaintiff should not be penalized for following the agency contact's incorrect instructions, and he provided the agency with an opportunity to reconcile the grievance by complying with those instructions. *Id.* at 123. Therefore, the plaintiff's failure to technically satisfy the statutory requirements did not bar his disability discrimination claim. *Id.*[2]

In this case, Plaintiff similarly attempted to amend his 2018 Charge by emailing a DDOL contact requesting to "add an addendum to [his] current Title VII Charge." (D.I. 55 at A0322) He provided a brief description of the 2019 failure to promote and the nature of his grievance. (*Id.*) Plaintiff concluded the message with the following: "Please let me know if you need this in a different form, have questions or need more information. Thanks." (*Id.*) The DDOL employee responded, "I acknowledge receipt of your email below and have noted same in your file." (*Id.* at A0321) The record before the court does not contain any further information

---

[2] Defendant's reply brief does not address Plaintiff's reliance on *James v. Sutliff Saturn, Inc.*, nor does it acknowledge his argument that the DDOL's response to his proposed addendum justifies his failure to file a separate charge of discrimination pertaining to the 2019 failure to promote. (D.I. 60)

suggesting that the DDOL or EEOC informed Plaintiff his addendum was insufficient or directed

him to the proper procedure. A genuine issue of material fact exists as to whether "the charging

party has done all that he can reasonably do to amend his charge" and has fulfilled his obligation

to provide the agencies with an opportunity to resolve the grievance. *Hicks v. ABT Assocs.*, 572

F.2d 960, 964 (3d Cir. 1978). Consequently, Defendant's motion for partial dismissal of Counts

I, III, and V regarding the 2019 failure to promote is DENIED.

Although it is not entirely clear from the briefing,[3] Defendant also appears to challenge

Plaintiff's retaliation and disparate impact[4] claims stemming from the 2018 failure to promote, as

described in the 2022 Charge. (D.I. 53 at 10) This argument is not persuasive. Even if the

retaliation claim was never presented to or investigated by the EEOC, "[t]he parameters of the

civil action in the district court are defined by the scope of the EEOC investigation which can

reasonably be expected to grow out of the charge of discrimination, including new acts which

occurred during the pendency of proceedings before the Commission." *Ostapowicz v. Johnson*

*Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976) (internal citations omitted).

Plaintiff alleges Defendant retaliated against him for filing the 2018 Charge and for

otherwise reporting the alleged discrimination against him. (D.I. 23 at ¶¶ 63-69, 75-77, 132-38)

Because the retaliation allegations are reasonably within the scope of the 2018 Charge, the court

may assume jurisdiction over the retaliation claim. *See Howze v. Jones & Laughlin Steel Corp.*,

750 F.2d 1208, 1212 (3d Cir. 1984) (explaining that newly asserted retaliation claim fell within

the scope of failure-to-promote race discrimination claim). "[R]etaliation for an EEOC Charge is

---

[3] Defendant summarizes its argument on the statutory bars to Plaintiff's Title VII claims as
follows: "Accordingly, Plaintiff's 2019 failure to promote claims in Count I, III, and V, as well
as his 2018 failure to promote claims under Count III and V should be dismissed." (D.I. 53 at
10)

[4] Plaintiff's disparate impact claim at Count V of the amended complaint is addressed at §
III.B.3, *infra*.

often found to fall within the scope of a reasonable EEOC investigation of that same charge."

*Sullivan v. Hanover Foods Corp.*, C.A. No. 18-803-MN, 2020 WL 211216, at *4 (D. Del. Jan.

14, 2020) (citing cases). Consequently, Defendant's motion for summary judgment on Count III

of the amended complaint is DENIED. The court need not reach Defendant's invocation of the

continuing violation doctrine, which focuses on the contents of the 2022 Charge and is confined

to two sentences in Defendant's opening brief with no follow-up in the reply brief. (D.I. 53 at

10)

### B.   Claims for Violations of Title VII (Counts I, III, & V)

The parties agree that Plaintiff's claims for failure to promote and retaliation based on

race or color are governed by the *McDonnell Douglas* framework, which applies to Title VII

claims for which there is no direct evidence of discrimination. *McDonnell Douglas Corp. v.

Green*, 411 U.S. 792, 802-03 (1973). Under this framework, Plaintiff bears the initial burden of

establishing a *prima facie* case of discrimination, which requires a showing that (1) he is a

member of a protected class, (2) he was qualified for the position he sought to attain, (3) he

suffered an adverse employment action, and (4) the action occurred under circumstances that

could give rise to an inference of intentional discrimination. *See id.* at 802; *Mandel v. M & Q

Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013). The fourth element can be established by

evidence of comparators who were treated more favorably than Plaintiff or through

circumstantial evidence showing a causal link between his membership in a protected class and

the adverse employment action. *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797-98 & n.7

(3d Cir. 2003).

If Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to establish a

legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*,

411 U.S. at 802. Defendant's burden is "relatively light" and is limited to the provision of a legitimate reason for the failure to promote. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Plaintiff can rebut Defendant's reason by showing that it is pretextual. *See In re Tribune Media Co.*, 902 F.3d 384, 392 (3d Cir. 2018). There are two means of establishing pretext in the Third Circuit to defeat a motion for summary judgment: (1) Plaintiff can present evidence that "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication[,]" or, alternatively, (2) Plaintiff can provide evidence that "allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Atkinson v. Lafayette College*, 460 F.3d 447, 454 (3d Cir. 2006) (quoting *Fuentes*, 32 F.3d at 762).

### 1. Failure to promote (Count I)

For purposes of the pending motion, Defendant concedes that Plaintiff has established a *prima facie* case on his failure to promote claims. (D.I. 53 at 10) Nonetheless, Defendant argues that summary judgment should be granted as to Count I because Defendant has proffered a legitimate, nondiscriminatory reason for the decisions not to promote Plaintiff, and Plaintiff has not established that the decisions were pretextual. (*Id.* at 10-14)

Plaintiff has demonstrated a genuine issue of material fact regarding Defendant's motive for failing to promote Plaintiff in 2018, 2019, and 2021. Defendant maintains Plaintiff performed poorly in his interviews in 2018 and 2021, and in 2019 Plaintiff's candidacy was rejected based on the results of a reference check. (*Id.*) But Plaintiff has "demonstrat[ed] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action[s] that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-

13

discriminatory reasons." *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016) (internal quotation marks and citations omitted).

Defendant maintains that Schilling was hired over Plaintiff in 2018 due to his "experience and his thoughtful responses to the interview questions[.]" (D.I. 55 at A0127) Canning, the hiring manager, said Plaintiff "did not meet his expectations during the interview; specifically that [Plaintiff] focused too much on [his] Contracts experience and did not discuss [his] experience in Operations." (*Id.* at A0266) But Plaintiff established that he and Canning had been working together for more than three years, and Canning was aware Plaintiff had more than 18 years of experience in operations because he signed Plaintiff's performance reviews during that time. (*Id.*) Canning's firsthand knowledge of Plaintiff's experience and his positive evaluations of Plaintiff's performance support a reasonable inference that his negative assessment of Plaintiff's interview was pretextual. "It would defy common sense for an interviewer to put aside all his or her personal and/or acquired knowledge of the interviewee and to proceed as if the interviewee were a stranger, and Title VIII does not mandate so much." *Fuentes*, 32 F.3d at 765, 767 (explaining that a plaintiff can discredit an employer's proffered reason by demonstrating inconsistences, incoherencies, or contradictions such that a reasonable factfinder could rationally find the reason "unworthy of credence[.]").

Plaintiff also points to evidence that one panel member, Urbanek, did not agree that Plaintiff's interview responses were "very poor" in comparison to the responses of other candidates. Urbanek's 2018 MERB hearing testimony suggests that he viewed several of Plaintiff's responses to interview questions as equivalent to or better than Schilling's responses to the same questions. (*See, e.g.*, D.I. 59, PLA069-70 at 47:5-48:19) Urbanek's assessment is not wholly consistent with testimony from panel members Gilliam and Canning regarding

14

perceived deficiencies in Plaintiff's interview responses, and a credibility assessment of the panel members' testimony should be left to the factfinder. (*Id.*, PLA109-10 at 87:9-88:4; PLA48-49 at 26:21-27:7)

There are also genuine issues of material fact surrounding Plaintiff's 2021 interview performance. The record shows that Canning sent his notes on Plaintiff to his fellow panel member, Brown, following the interview. (D.I. 59 at PLA248) Brown's declaration largely repeats Canning's assessment, stating that Plaintiff "did not thoroughly answer the questions asked by the panel or provide examples of work or achievements that would be expected of an employee with his tenure[,]" and "he did not provide answers sufficient to demonstrate that he worked well with other employees or would be able to effectively manage and lead other employees." (*Id.*, A0544 at ¶ 13) There is no evidence in the record indicating that Brown solicited Canning's input, and it is reasonable to infer that Canning's negative assessment of Plaintiff's interview performance was influenced by Plaintiff's grievance against Canning following the 2018 failure to promote. In fact, Plaintiff testified that the results of the 2021 interview felt predetermined and the panel members were not receptive to his responses. (D.I. 55, A0487 at 92:10-93:23)

The panel's assessment of Plaintiff's 2021 interview performance is also inconsistent with his prior performance evaluations, which indicate his work "exceeds expectations." He was recognized by the General Assembly in 2014 shortly after he transferred to the Assistant Maintenance Engineer position and worked closely with area supervisors and others to optimize productivity. (D.I. 59 at PLA268, PLA272, PLA276) These evaluations contradict the panel's suggestion that Plaintiff would not be able to work well with other employees and had no meaningful achievements during the length of his tenure.

15

Defendant maintains that Plaintiff was not promoted in 2019 due to the results of a reference check from Canning, but the propriety of the reference check is in dispute. (D.I. 55 at A0204) Testimony from panel member Probert indicates that Plaintiff's interview and experience were better than Garcia's, and the EEO hiring report confirms that Plaintiff "interviewed well and would have been the selected candidate if not for the results of the reference check." (*Id.*, A0204, A0457 at 30:2-11) It is reasonable to infer that Gilliam conducted reference checks despite Plaintiff's superior candidacy as a pretext for denying Plaintiff the position.

The parties also dispute whether Gilliam followed the proper procedure by contacting Canning even though Plaintiff did not list him as a reference. (D.I. 58 at ¶ 9) The declaration of Defendant's Director of Human Resources states that the hiring manager "calls the *candidates' references* after the interview, and writes a justification for each candidate being considered." (D.I. 55, A0538 at ¶ 12; *see also* A0457 at 30:2-11) (emphasis added). Gilliam's solicitation of Canning's input under these circumstances, and despite their prior involvement in Plaintiff's grievances, gives rise to an inference that the proffered reason for failing to promote Plaintiff was pretextual. There are also disputes of fact regarding whether Canning's assessment that Plaintiff should "be more involved on the operations side of the house" was properly considered when the critique was never documented or discussed with Plaintiff prior to the reference check, and allegedly violated policy protocols. (*Id.*, A0457 at 30:19-31:1; A0060; A0204)

Plaintiff's evidence is sufficient to support an inference that Defendant's failure to promote in 2018, 2019, and 2021 was motivated by discriminatory animus. *See Fuentes*, 32 F.3d at 765. During Canning's tenure as hiring manager, he hired six employees, five of whom were white. (D.I. 59 at PLA247) When Canning hired for the position of Maintenance Engineer, he

selected white males both times. (*Id.*) Moreover, Plaintiff testified that Canning made comments about the color of Plaintiff's skin and the texture of his hair on two occasions predating the failures to promote. (D.I. 55 at A0508, 175:1-177:20) Viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in Plaintiff's favor, the court concludes that a factfinder could infer from this evidence that discrimination was more likely than not a motivating factor in Defendant's failure to promote Plaintiff. *See Atkinson*, 460 F.3d at 454. Because there are genuine issues of material fact regarding pretext, "it would be inappropriate for the Court to impose its own value and credibility judgments in place of a consideration of evidence by the requested trier of fact: a jury." *Rivera v. Roma*, C.A. No. 17-1255-MN, 2019 WL 2191245, at *4 (D. Del. May 21, 2019). For these reasons, Defendant's motion for summary judgment on Count I is DENIED.

### 2. Retaliation (Count III)

To establish a *prima facie* case of discriminatory retaliation, Plaintiff must demonstrate that: (1) he engaged in a Title VII protected activity; (2) the employer took an adverse employment action against him; and (3) there is a causal link between the protected activity and the adverse employment action. *Zelinski v. Pa. State Police*, 108 F. App'x 700, 705 (3d Cir. 2004). Defendant contends that summary judgment should be granted on Count III because Plaintiff has failed to establish a causal connection between the charges of discrimination and Defendant's failure to promote Plaintiff in 2019 and 2021. (D.I. 53 at 14)

A reasonable jury could find in favor of Plaintiff regarding the causation element of his retaliation claim. For the reasons stated at § III.B.1, *supra*, Plaintiff has established the existence of a genuine issue of material fact regarding whether the reasons for Defendant's failure to promote Plaintiff were pretextual. "If it is determined that these reasons are merely pretextual,

17

then they can be considered inconsistent reasons for the adverse employment action, ultimately leading to a conclusion of causation" for purposes of a retaliation claim. *Zelinski*, 108 F. App'x at 707 (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000) (holding that a plaintiff may establish a causal connection on a retaliation claim "by showing that the employer gave inconsistent reasons" for the adverse employment action)).

This and other evidence also supports a reasonable inference that Plaintiff was subjected to an intervening pattern of antagonism. *See Zelinski*, 108 F. App'x at 706-07 (citing multiple instances of the plaintiff being subjected to false or unfair criticism as factual support for an intervening pattern of antagonism). In Plaintiff's 2018 performance evaluation, Schilling cited two examples of Plaintiff responding to complaints in an untimely manner and suggested that Plaintiff should attend conferences out of state. (D.I. 55, A0390 at 46:18-48:6) Schilling subsequently amended the evaluation to remove these criticisms after Plaintiff established that neither was justified. (*Id.*) A reasonable jury could find that the inaccurate performance evaluations and repeated failures to promote Plaintiff following the 2018 Charge amount to retaliation against Plaintiff for engaging in protected conduct. Therefore, Defendant's motion to dismiss Count III of the amended complaint is DENIED.

### 3.  Disparate impact (Count V)

Plaintiff does not oppose Defendant's motion for summary judgment on the disparate impact claim at Count V of the amended complaint. (D.I. 56 at 1 n.1) Consequently, Defendant's motion is GRANTED with respect to the disparate impact claim.

### C.  State Law Claims Under the DDEA (Counts II & IV)

Finally, Defendant contends that Plaintiff's DDEA claims should be dismissed because he is barred from simultaneously seeking relief under the DDEA and Title VII. (D.I. 53 at 19)

18

The DDEA provides that Plaintiff "shall elect a Delaware or federal forum to prosecute the employment discrimination cause of action so as to avoid unnecessary costs, delays, and duplicative litigation. [Plaintiff] is barred by this election of remedies from filing cases in both Superior Court and the federal forum." 19 *Del. C.* § 714(c). Persuasive authority from this district holds that Delaware law does not prohibit the simultaneous pursuit of state and federal employment discrimination claims, so long as they are brought in the same action in federal court. *See Wooten v. City of Wilmington*, C.A. No. 19-2133-RGA, 2021 WL 411707, at *7 ("Plaintiff's claims under the DDEA will survive Defendant's motion to dismiss to the same extent that the claims did under the Title VII analysis."). Nothing in the statutory text or the legislative history of § 714(c) suggests that a plaintiff is barred from simultaneously pursuing DDEA and federal statutory claims in a single federal court action. *See Alred v. Eli Lilly & Co.*, 771 F. Supp. 2d 356, 368 (D. Del. 2011). Consequently, Defendant's motion for summary judgment on Counts II and IV of the amended complaint is DENIED.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED-IN-PART. (D.I. 53) The motion is GRANTED with respect to Count V of the amended complaint, and it is DENIED in all other respects. An Order consistent with this Memorandum Opinion shall issue.